**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRIS ROTHSTEIN AND STANLEY ROTHSTEIN, on behalf of themselves and a class of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AUTO CLUB SOUTH, AMERICAN AUTOMOBILE ASSOCIATION, and PRICELINE.COM, <br><br> Defendants. | Civil Action No. 15-cv-09391-LAK-RLE |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMSS THE AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

BRIEF STATEMENT OF RELEVANT FACTS.................................................................. 2

I.      The AAA Defendants and Their Business.................................................................. 2

II.     The Contracts at Issue in this Case: Plaintiffs' and Class Members' .................. 2

III.    AAA's Breach of Plaintiffs' Membership Contracts............................................. 3

IV.     Defendants' Unilateral Attempt to Modify the AAA Membership Contracts
        by Imposing Purported Terms through AAA.com ................................................ 4

LEGAL ARGUMENT ................................................................................................................ 5

V.      Standard of Review.................................................................................................... 5

VI.     Defendants Do Not Address, Much Less Dispute, the Terms of the AAA Membership
        Contracts at Issue ...................................................................................................... 6

VII.    Defendants Erroneously Argue That Their Purported Terms Modified the AAA
        Membership Contracts and Relieved Them of Their Obligations Thereunder.................. 7

        A.      Whether a Contract Has Been Modified is a Question of Fact.............................. 7

        B.      Defendants' Purported Terms Are an Impermissible Unilateral Contract
                Modification........................................................................................................ 8

        C.      Defendants Offered No New Consideration for Their Purported Contract
                Modification........................................................................................................ 9

VIII.   Plaintiffs Adequately Allege Breach of Their AAA Membership Contracts ................... 9

IX.     *Johnson v. Priceline.com* Is Inapposite................................................................ 10

X.      Florida Law Prohibits Application of the Limitation of Liability Contained  in the
        Purported Terms........................................................................................................ 12

XI.     General Contract Principles Apply to the Clickwrap Purported Terms, Further
        Confirming Their Invalidity.................................................................................... 13

XII.    Defendants' Additional Arguments Regarding the Sufficiency of Plaintiffs'
        Breach of Contract Allegations Also Fail.......................................................... 15

        A.      The Purported Terms Cannot Be the Parties' Entire Agreement........................ 15

                1.      Defendants Breached Promises In The Handbook and FAQs................ 16

        B.      Plaintiffs Adequately Plead That They Have Standing To Bring a Claim ........... 18

        C.      Plaintiffs Adequately Allege That Defendants Breached Their Promise To
                Provide Exclusive Discounts At Rates Only Available To Members ................. 19

        D.      Plaintiffs Adequately Allege That Defendants Breached Their Promise To
                Provide Services Without Use Of A Third Party................................................ 20

IX.     Plaintiffs Adequately Plead A Claim Under N.Y. General Business Law §349 ............. 21

XIII.   Plaintiffs Adequately Allege That Defendants Breached The Duty of
        Good Faith and Fair Dealing ............................................................................... 23

XIV.    Plaintiffs Adequately Allege Unjust Enrichment ............................................... 23

XV.     Plaintiffs' Class Claims are Not Defective ........................................................ 24

CONCLUSION ....................................................................................................................... 24

# TABLE OF AUTHORITIES

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 6, 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 5

*Berkson v. Gogo LLC*,
  97 F.Supp.3d 359 (E.D.N.Y. 2015) ............................................................. 13

*Chen-Oster v. Goldman, Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) ......................................................... 24

*Chiste v. Hotels.com L.P.*,
  756 F.Supp.2d 382 (S.D.N.Y. 2010) ........................................................... 11

*City of Homestead v. Johnson*,
  760 So.2d 80 (Fla. 2000) ............................................................................. 18

*Commerce Funding Corp. v. Comprehensive Habilitation Servs.*,
  2005 U.S. Dist. LEXIS 2832 (S.D.N.Y. Feb. 24, 2005) ........................... 7, 9

*Creative Am. Educ. v. Learning Exp. Sys. LLC*,
  2015 U.S. Dist. LEXIS 102460 (S.D. Fla. 2015) .......................................... 9

*Cross & Cross Properties, Ltd. v. Everett Allied Co.*,
  866 F.2d 497 (2nd Cir. 1989) ...................................................................... 23

*Cruz v. Fxdirectdealer, LLC*,
  720 F.3d 115 (2nd Cir. 2013) ................................................................ 21, 22

*Dimond v. Darden Rests., Inc.*,
  2014 U.S. Dist. LEXIS 94004 (S.D.N.Y. 2014) ..................................... 21, 22

*Diverse Elements, Inc. v. Ecommerce, Inc.*,
  5 F.Supp.3d 1378 (S.D. Fla. 2014) ............................................................. 13

*EUA Cogenex Corp. v. North Rockland Cent. Sch. Dist.*,
  124 F.Supp.2d 861 (S.D.N.Y. 2000) ........................................................... 23

*Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*,
  328 F. Supp. 2d 1319 (S.D. Fla. 2004) ......................................................... 9

*Hudson Specialty Ins. Co. v. N.J. Transit Corp.*,
  2015 U.S. Dist. LEXIS 73101 (S.D.N.Y. 2015) .......................................... 17

*In re Horizon Organic Milk Mktg. & Sales Practice Litig.*,
  955 F.Supp.2d 1311 (S.D. Fla. 2013) ......................................................... 23

*In re Zinc Antitrust Litig.*,
  2016 U.S. Dist. LEXIS 73192 (S.D.N.Y. June 6, 2016) ............................. 24

*Intercept Pharms., Inc. v. Howard*,
  615 Fed. Appx. 42 (2nd Cir. 2015) ............................................................... 5

*IT Strategies Group, Inc. v. Allday Consulting Group, LLC*,
   975 F.Supp.2d 1267 (S.D. Fla. 2013).................................................................... 13
*Johnson v. Priceline.com*,
   711 F.3d 271 (2nd Cir. 2013)........................................................................ 6, 10, 11
*Marshall v. Priceline.com Inc.*,
   2006 Del. Super. LEXIS 447, 2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006)................. 11
*Marty v. Anheuser-Busch Cos.*,
   43 F.Supp.3d 1333 (S.D. Fla. 2014).................................................................... 19
*Meyer v. Kalanick*,
   2016 U.S. Dist. LEXIS 99921 (S.D.N.Y. July 29, 2016) .............................................. 13, 14
*Phila. Am. Life Ins. Co. v. Buckles*,
   350 Fed. Appx. 376 (11th Cir. 2009) .................................................................... 16
*Ramos-Barrientos v. Bland*,
   661 F.3d 587 (11th Cir. 2011).......................................................................... 18
*Rao v. Int'l Licensing Indus. Merch. Assoc.*,
   2015 N.Y. Misc. LEXIS 2615 (N.Y. Sup. Ct. 2015) .................................................... 8
*RTG Furniture Corp. v. Indus. Risk Insurers*,
   616 F.Supp.2d 1258 (S.D. Fla. 2008).................................................................... 17
*Salco Distribs. LLC v. Icode, Inc.*,
   2006 U.S. Dist. LEXIS 9483 (M.D. Fla. 2006) ......................................................... 13
*Specht v. Netscape Commcn's Corp.*,
   306 F.3d 17 (2nd Cir. 2002).................................................................. 13, 14, 16
*St. Joe Corp. v. McIver*,
   875 So. 2d 375 (Fla. 2004)....................................................................... 7, 8, 9
*TransformaCon, Inc. v. Vista Equity Partners, Inc.*,
   2015 U.S. Dist. LEXIS 94896 (S.D.N.Y. 2015) ........................................................ 23
*Watts v. Jackson Hewitt Tax Serv.*,
   579 F.Supp.2d 334 (E.D.N.Y. 2008).................................................................... 22
*Wechsler v. Hunt Health Sys.*,
   330 F.Supp.2d 383 (S.D.N.Y. Aug 11, 2004) .......................................................... 10
*Weinstein v. Ebay, Inc.*,
   819 F.Supp.2d 219 (S.D.N.Y. 2011).................................................................... 22

Statutes

Fla. Stat. § 559.9335(9)(c) ................................................................................ 12
Fla. Stat. § 559.9335(13)(a) and (b)...................................................................... 12
Fla. Stat. § 559.9336(6)................................................................................... 13
N.Y. General Business Law §349............................................................................ 21, 22

Rules

Fed. R. Civ. P. 12(b)(6)................................................................................... 5

Plaintiffs Iris and Stanley Rothstein ("Plaintiffs") respectfully submit this opposition to the Motion to Dismiss Amended Class Action Complaint, Dkt. No. 46 ("MTD") filed by Defendants Auto Club South, American Automobile Association and Priceline.com. ("Defendants"). For reasons explained below, the Court should deny the MTD in its entirety.

## INTRODUCTION

Defendants ask the Court to endorse the trap they claim to have laid for Plaintiffs and Class members who entered into membership contracts with the AAA Defendants. These membership contracts, on which Plaintiffs' claims are based, promised members exclusive discounted rates for hotel bookings. Defendants do not deny this promise or challenge the validity of the membership contracts. Instead, Defendants' MTD ignores and mischaracterizes the allegations of Plaintiffs' Amended Complaint[1] to support an alternate argument: that AAA.com, the Web site to which the AAA Defendants route their members, contained terms and conditions which modified the membership contracts, such that Defendants were under no duty to deliver the promised exclusive discounts on hotel bookings. In other words, these terms and conditions allegedly took away the hotel booking benefits for which Plaintiffs and Class members had previously contracted. Consequently, Defendants argue, Plaintiffs have no cause of action even though the hotels they booked through AAA.com disclosed that Plaintiffs were overcharged and did not receive either exclusive or discounted rates.

Defendants' arguments are defeated, however, by the application of basic contract law. Defendants' alleged modification of Plaintiffs' membership contracts is an impermissible unilateral modification and is unsupported by any consideration. Further, the issue of modification is one of fact which cannot be resolved on a motion to dismiss. Adding to the legion of problems

---

[1] Dkt. No. 39 ("Amended Complaint" or "Am. Complt.").

with Defendants' proposed trap, is that Plaintiffs did not consent to the purported terms and conditions on AAA.com. Also, Florida statutory law governing travel service providers completely bars Defendants' purported limitation of liability.

For these and other reasons, each discussed in more detail below, Defendants' MTD should be denied in its entirety.

## BRIEF STATEMENT OF RELEVANT FACTS

### I.      The AAA Defendants and Their Business

Defendant American Automobile Association is a federation of automobile clubs, with regional member clubs spread throughout the United States. Am. Complt., ¶ 12. Defendant Auto Club South ("ACS") is a regional member club of Defendant American Automobile Association, servicing Florida, Georgia, and Tennessee. *Id.* at ¶ 14. Members of ACS pay annual dues to ACS in return for receiving membership benefits, some of which dues are remitted to the American Automobile Association. *Id.* at ¶ 15. Hereafter, the American Automobile Association and ACS will be collectively referred to as "AAA" for ease of reference.

### II.     The Contracts at Issue in this Case: Plaintiffs' and Class Members' Membership Contracts with AAA

Plaintiffs were both members of AAA at the time they booked the hotel reservations at issue, and Plaintiffs' and Class members' membership contracts with AAA are the contracts on which Plaintiffs' breach of contract and breach of the duty of good faith and fair dealing claims are grounded. *Id.* at ¶¶ 5, 17-18, 55-63. Among the benefits promised by AAA to Plaintiffs and Class members under their membership contracts are "exclusive discounted rates for a wide variety of AAA diamond-rated hotels worldwide." AAA Member Benefits Handbook, attached to Amended Complaint as Exhibit A, at 25 ("Handbook"); *see also id.* at 27; Am. Complt., ¶ 16.

Through the Handbook, which is part of Plaintiffs' and Class members' membership contracts, AAA makes the same promise to all of its members:

> When you travel, rest assured that you are getting a great hotel value when you book your stay through AAA. Your membership offers exclusive discounted rates for a wide variety of AAA Diamond rated hotels worldwide. Easily reserve your hotel online, by phone or in person at your local AAA office with specially trained AAA Travel professionals. For more information visit AAA.com. (*See* Handbook at 25; *see also id.*, at 27; Am. Complt., ¶ 67).

The AAA.com Web site ("AAA.com") repeats these promises: "The greatest benefit of using AAA Travel is that as a AAA member, you'll get access to exclusive member benefits and savings. When you book your next vacation with AAA, receive the following exclusive AAA member benefits…" Listed among these benefits are hotel discounts. Am. Complt., ¶ 16. AAA.com also promises to deliver to Plaintiffs and Class members "member rates" with "exclusive AAA member savings." *Id.* at ¶ 69.

## III.     AAA's Breach of Plaintiffs' Membership Contracts

Their memberships with AAA allowed Plaintiffs and Class members to access AAA.com to book hotel reservations and, indeed, AAA directed them to do so. *Id.* at ¶¶ 66-67. In June 2014, Mrs. Rothstein used AAA.com to make reservations for the following three hotels, paying for these reservations in advance at the time that she booked them on AAA.com: (1) The Homewood Suites by Hilton in Middletown, Rhode Island, for a total cost charged by AAA.com of $1,118.88, for a stay between June 20 and June 27, 2014; (2) The Hampton Inn White River Junction in White River Junction, Vermont, for a total cost charged by AAA.com of $573.68, for a stay between July 17 and July 21, 2014; and (3) The Holiday Inn Express in Springfield, Vermont, for a total cost charged by AAA.com of $402.00, for a stay between July 21 and July 24, 2014. *Id.* at ¶¶ 22-23.

AAA promoted each of these hotels on AAA.com as having AAA "member rates" with "exclusive AAA member savings," which Mrs. Rothstein believed that she would receive. *Id.* at ¶

25. Upon arrival, however, a desk attendant at the Homewood Suites by Hilton revealed to Mrs. Rothstein that she had overpaid for her room by booking through AAA.com. *Id.* at 26. The hotel employee then provided her with an itemized statement showing what the room would have cost had Mrs. Rothstein booked with the hotel directly, which was $940.45, rather than the $1,118.88 which AAA.com had charged. *Id.*

Essentially the same process was repeated at the two other hotels that Mrs. Rothstein had booked and pre-paid through AAA.com. *Id*. at ¶ 27. At The Hampton Inn White River Junction, Mrs. Rothstein was informed that she would have paid $479.44 by booking with the hotel directly, rather than $573.68. *Id.* At the Holiday Inn Express in Springfield, Vermont, Mrs. Rothstein was informed that she could have paid $339.66, rather than $402.00. *Id.* Both hotels provided Mrs. Rothstein with itemized statements showing what the charges would have been had she booked with the hotels directly. *Id.*

Thus, Plaintiffs did not receive discounted rates by booking through AAA.com, according to the hotels at which they stayed. Indeed, Plaintiffs would have paid less by bypassing AAA.com completely. After discovering this, Mrs. Rothstein asked AAA to refund the overcharges she paid through AAA.com, but AAA refused. *Id.* at ¶ 33. With no other recourse, Mrs. Rothstein filed a credit card dispute, which was challenged by Defendant Priceline.com ("Priceline"). *Id.* at ¶¶ 34-35, 40. As a result of this challenge, Plaintiffs were unable to recover all of the overcharges they paid to AAA.

## IV.   Defendants' Unilateral Attempt to Modify the AAA Membership Contracts by Imposing Purported Terms through AAA.com

After filing the initial complaint in this action, Defendants' counsel contacted counsel for Plaintiffs and informed them that they believed AAA.com had imposed terms and conditions on Plaintiffs which governed their booking of the hotels at issue in this case and thereby somehow

modified or voided Plaintiffs' AAA membership contracts. Thus, when Plaintiffs filed their Amended Complaint, they anticipated that Defendants would raise these purported terms and conditions ("Purported Terms") and addressed them in the Amended Complaint (at ¶¶ 51-54).

Defendants have attached their Purported Terms to the Declaration they submitted with their motion to dismiss. *See* Declaration of Elinor H. Murárová, Dkt. 47, Ex. 1 (the "Declaration"). As stated in the Amended Complaint, however, Plaintiffs have no recollection of ever seeing or agreeing to the Purported Terms during their use of AAA.com. Am. Complt., ¶ 51. Further, Priceline, when it challenged Plaintiffs' credit card dispute, did not raise the Purported Terms but, instead, referred to separate terms and conditions on its own Web site, which neither Plaintiffs nor any other user of AAA.com accessed as part of their hotel booking process. *Id*. at ¶¶ 38, 51.

Thus, prior to this lawsuit being filed, Priceline itself did not believe that Plaintiffs had agreed to a set of terms and conditions on AAA.com. *Id*. at ¶ 51. And there are more problems with Defendants' contentions regarding the Purported Terms. Specifically: (1) the screenshots attached to Defendants' Declaration do not agree with the screenshots saved by Plaintiffs of the same transactions (*Cp*. Am. Complt. Ex. B-D *with* Dkt. 47, Ex. 2); and (2) although Mrs. Rothstein booked the hotel reservations (Am. Complt., ¶¶ 22-23), her initials appear on only one of Defendants' screenshots (*See* MTD Ex. 2 at 2-7).

## LEGAL ARGUMENT

### V.    Standard of Review

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Intercept Pharms., Inc. v. Howard*, 615 Fed. Appx. 42, 43 (2nd Cir. 2015). The complaint need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the

alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Applying this standard here, there is no basis to dismiss Plaintiff's claims.

**VI.    Defendants Do Not Address, Much Less Dispute, the Terms of the AAA Membership Contracts at Issue**

In order to shoehorn this case into their preferred legal theory, Defendants fail to address the contracts on which Plaintiffs' breach of contract claim is based: their AAA membership contracts. As the Amended Complaint states, Plaintiffs allege a breach of their AAA membership contracts, which promised "exclusive discounted rates" to members. *See* Am. Complt., ¶¶ 55-63; *see also*, *e.g.*, ¶¶ 15-16, 19, 52. Plaintiffs further allege that the hotels they booked through AAA.com told them that their rates were neither discounted nor exclusive because any individual who called these hotels directly would have received a better rate than Plaintiffs did through AAA.com. *See id.* at ¶¶ 23-33, 59-63.

The lack of exclusivity is reinforced by the fact that, unbeknownst to Plaintiffs when they booked, their booking services were provided by Priceline, a third party provider of hotel bookings with its own Web site open to the public, not just Plaintiffs or AAA members. Indeed, the cases on which Defendants primarily rely involved individuals who booked through Priceline's own site, not AAA's, and who were not booking as AAA members. *See, e.g.*, MTD at 11-12 (discussing *Johnson v. Priceline.com*, 711 F.3d 271 (2nd Cir. 2013)) (discussed *infra*, § V).

The issues that Defendants *do not contest* in their MTD are both telling and dispositive:

- Defendants do not deny that Plaintiffs' memberships with AAA are contracts; and

- Defendants do not challenge that these memberships promised Plaintiffs exclusive discounted hotel rates.[2]

---

[2] Understandably so, as a central pillar of AAA's value proposition for its members are these exclusive, discounted rates. *See, e.g.* Handbook, Am. Complt., Ex. H at 25.

Indeed, Defendants do not even attempt to address whether Plaintiffs have adequately alleged a breach of their AAA membership contracts because Plaintiffs' allegations plainly state a claim for breach of these contracts.[3] Instead, Defendants' argument, reduced to its essence, is that the promises AAA made to Plaintiffs as part of their AAA membership contracts are irrelevant because these contracts were somehow modified by the Purported Terms allegedly contained on AAA.com. This argument fails for many reasons, each discussed in detail below.

## VII.  Defendants Erroneously Argue That Their Purported Terms Modified the AAA Membership Contracts and Relieved Them of Their Obligations Thereunder

### A.  Whether a Contract Has Been Modified is a Question of Fact

"Whether the parties have validly modified a contract is usually a question of fact." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381-82 (Fla. 2004)).[4] For the following reasons, there are numerous factual issues related to Defendants' modification argument which preclude the argument from being decided on a motion to dismiss.

Defendants go outside of the Amended Complaint to attach the Purported Terms. Plaintiffs dispute that they agreed to these Purported Terms. Am. Complt., ¶ 51. Further, the AAA.com screenshots that Plaintiffs saved when they booked their hotels do not show the initials which Defendants contend demonstrate Plaintiffs' agreement to the Purported Terms. *See* Am. Complt., Ex. B-D. Also, although Mrs. Rothstein booked the hotels (*Id.* at ¶¶ 22-23), only Defendants' alleged screenshot for the Homewood Suites by Hilton shows initials which might arguably be presumed to be hers. MTD Ex. 2 at 6-7. The other screenshots show the initials "SW" and "SR," respectively. MTD Ex. 2 at 2-5.

---

[3] The sufficiency of Plaintiffs' allegations supporting their breach of contract claim is discussed in Section IV below.

[4] New York law is in agreement. *See, e.g.*, *Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 2005 U.S. Dist. LEXIS 2832, *34 (S.D.N.Y. Feb. 24, 2005) (stating that determination of whether parties intended to modify a contract is the "sole province of the fact-finder") (citation omitted).

Moreover, as stated in the Amended Complaint, when Defendant Priceline challenged Plaintiffs' credit card dispute, it did not raise the Purported Terms but, instead, referred to terms and conditions on its own site, which neither Plaintiffs nor any other user of AAA.com accessed as part of their hotel booking process. Am. Complt., ¶ 51. Thus, prior to this lawsuit being filed, Priceline itself did not believe that Plaintiffs had agreed to a set of terms and conditions on AAA.com. *Id.* Consequently, the existence of numerous factual issues precludes Defendants' modification argument from being decided on a motion to dismiss.[5]

### B.  Defendants' Purported Terms Are an Impermissible Unilateral Contract Modification

A "party cannot modify a contract unilaterally." *St. Joe Corp.*, 875 So. 2d at 381-82; *Rao v. Int'l Licensing Indus. Merch. Assoc.*, 2015 N.Y. Misc. LEXIS 2615 (N.Y. Sup. Ct. 2015) (citation omitted). In other words, all parties must agree to a modification. However, as is clear from Defendants' description of the manner in which acceptance of the Purported Terms allegedly operated on AAA.com, Plaintiffs had no choice but to agree to the Purported Terms if they wanted to complete their hotel bookings (a service promised them under their membership contracts), *i.e.*, AAA.com would not have accepted their payment until they agreed to the Purported Terms.

If true, then Plaintiffs and any Class member who booked travel online would have been *forced* to agree to a deceptive and unilateral modification of their membership contracts, intended to deprive them of a primary benefit of these contracts: exclusive and discounted hotel bookings.

---

[5] Under Florida law, a contract cannot be modified without the consent of all parties whose rights are affected. *St. Joe Corp.*, 875 So. 2d at 381-82. While the issue of consent is a factual determination, the allegations of the Amended Complaint make clear that Plaintiffs did not intend to agree to any modification of their AAA membership contracts. In addition to the allegations and factual issues discussed in the preceding section, Plaintiffs complained to AAA about their hotel rates (Am. Complt., ¶¶ 32-33) and filed a credit card dispute regarding those rates (*Id.* at ¶¶ 34-40, 51), further confirming that they did not agree to any modification of their memberships which would have deprived them of exclusive, discounted rates.

Equally problematic is that it was Priceline, the apparent third-party operator of AAA.com, which attempted to impose this unilateral contract modification through the Purported Terms. Clearly, an entity that was not a party to the original contract cannot effect a modification. *See St. Joe Corp.*, 875 So. 2d at 381 (only parties to contract can modify). Consequently, even assuming Defendants' portrayal of how AAA.com operated to be true, the Purported Terms could not have modified Plaintiffs' membership contracts.

### C.  Defendants Offered No New Consideration for Their Purported Contract Modification

A contract modification must be supported by new consideration. *Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co.*, 328 F. Supp. 2d 1319, 1342-1343 (S.D. Fla. 2004) (citation omitted).[6] Defendants do not claim that any consideration was offered to Plaintiffs in return for their alleged acceptance of the Purported Terms. Thus, Defendants' modification argument fails on this basis alone. To the contrary, the Purported Terms deprived Plaintiffs of promised benefits and offered them nothing in exchange. Accordingly, for all of the foregoing reasons, Defendants' Purported Terms did not effect a modification of Plaintiffs' AAA membership contracts and are therefore inapplicable to this case and wholly void.[7]

### VIII.  Plaintiffs Adequately Allege Breach of Their AAA Membership Contracts

In order to focus on their Purported Terms, Defendants ignore Plaintiffs' well-pleaded allegations of breach of contract concerning the AAA membership contracts at issue. In Florida, the elements of a breach of contract are (1) a valid contract; (2) material breach; and (3) damages. *Creative Am. Educ. v. Learning Exp. Sys. LLC*, 2015 U.S. Dist. LEXIS 102460, at *105 (S.D. Fla.

---

[6] Again, New York law is in agreement. *See Commerce Funding Corp. v. Comprehensive Habilitation Servs.*, 2005 U.S. Dist. LEXIS 2832 (S.D.N.Y. Feb. 24, 2005) (party asserting modification must demonstrate consideration) (citation omitted).

[7] For the same reasons, the Purported Terms could not effect a modification of any other AAA member's membership contract.

2015).[8] Plaintiffs and Defendants formed a valid contract when Plaintiffs entered into their AAA membership contracts, whereby they paid dues in exchange for exclusive hotel discounts at "member rates," no booking fees, and the right to reserve bookings through trained AAA staff. *See generally* Am. Complt., ¶¶ 15, 17-19, 23-25, 29-33 (*e.g.*, "Mrs. Rothstein understood that one of the primary benefits of being a AAA member…is the promise that AAA and its clubs make that their members will 'save on hotels and rental cars by booking them with AAA' and that she would enjoy 'exclusive discounted rates' on hotels.").

Plaintiffs, at AAA's direction, used AAA.com to book hotel reservations and subsequently learned from the hotels themselves that they had not received exclusive discounts but had, in fact, been overcharged. *See*, *e.g.*, Am. Complt., ¶¶ 22-34. The failure to give Plaintiffs exclusive discounts, as well as the charging of undisclosed fees in the process, was a material breach of Plaintiffs' membership contracts. *Id.* at ¶¶ 1, 3, 55-63. Plaintiffs were damaged in the amount that they were overcharged. *Id.* at ¶ 40. Plaintiffs thus adequately plead a breach of their membership contracts with AAA.

## IX.        *Johnson v. Priceline.com* **Is Inapposite**

Defendants invite the Court to rely on *Johnson v. Priceline.com*, 711 F.3d 271 (2nd Cir. 2013) to dismiss Plaintiffs' breach of contract claim. MTD at 11. *Johnson* differs from this case in every material respect, however, other than it involved claims against Priceline. In *Johnson*, the plaintiffs used the Priceline.com Web site's online "Name Your Own Price" function to name prices they were willing to pay for hotel rooms. *Johnson v. Priceline.com*, 711 F.3d at 273. Because Priceline fulfilled the plaintiffs' bids and provided them with hotel rooms at their named prices,

---

[8] The New York elements are materially similar: (1) existence of a contract, (2) plaintiff's performance, (3) breach by defendant, and (4) damages. *Wechsler v. Hunt Health Sys.*, 330 F.Supp.2d 383, 420 (S.D.N.Y. Aug 11, 2004).

the Second Circuit found that the plaintiffs had no cause of action simply because Priceline failed to disclose that it made a profit at the plaintiffs' named price. *Id.* at 280. The court's holding rested on a finding that no agency or fiduciary relationship was formed between the plaintiffs and Priceline, simply because plaintiffs had used Priceline's Web site. *Id.* at 276.

The differences between this case and *Johnson* are plain. First, *Johnson* did not involve users who had a pre-existing contract governing the obligations which Priceline owed them, as Plaintiffs and Class members have here. This was, of course, why the plaintiffs in *Johnson* attempted to argue that Priceline owed them a fiduciary duty. Second, due to the absence of pre-existing contracts in *Johnson*, there was no issue of contract modification as there is in this case. Third, the plaintiffs in *Johnson* dealt directly with Priceline by accessing Priceline's Web site and knew they were dealing with Priceline, unlike Plaintiffs here. Fourth, this case does not involve a "name your price" function such as the one in *Johnson*, but instead the promise to deliver exclusive discounted rates promised by AAA to its members, both in their membership contracts and on AAA.com. Plaintiffs allege that they did not receive exclusive discounted rates, a fact that they discovered only when they arrived at the hotels they booked. Plaintiffs thus did not receive the benefit of the bargain they struck, as they unknowingly paid far more than they would have but for Defendants' breach of the membership contract. Am. Complt., ¶¶ 28-29, 33, 56-73. There is no credible way these facts can be analogized to *Johnson*, where the plaintiffs chose the rate they wanted to pay, were given this rate, and complained because Priceline had made a profit. Accordingly, *Johnson* is inapposite.[9]

---

[9] For identical reasons, the same is true of Defendants' other cited cases involving consumers who booked hotels online. *See Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382 (S.D.N.Y. 2010) (claims were brought by users of Priceline's Web site who had no pre-existing membership contracts, either with AAA or any other entity); *Marshall v. Priceline.com Inc.*, 2006 Del. Super. LEXIS 447, 2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006) (same).

**X.     Florida Law Prohibits Application of the Limitation of Liability Contained in the Purported Terms**

For the reasons discussed above, none of the Purported Terms can be applied to Plaintiffs and Class members. However, even if that was not the case, the limitation of liability contained in the Purported Terms would still be void. As stated on the final page of the Purported Terms and Conditions (Dkt. 47, Ex. 1 at 13): "For Florida Residents: Priceline.com is registered with the State of Florida as a Seller of Travel. Registration No. ST-32150." The Florida Sellers of Travel Act ("Act") prohibits a "seller of travel" registered under the Act or any "other person" from imposing a limitation of liability on purchasers of travel services. It violates the Act:

> **(a)** To include in any vacation certificate or contract any provision purporting to waive or limit any right or benefit provided to purchasers under this part; or
>
> **(b)** To seek or solicit such waiver or acceptance of limitation from a purchaser concerning rights or benefits provided under this part.

Fla. Stat. § 559.9335(13)(a) and (b).

Among the rights and benefits provided under the Sellers of Travel Act are prohibitions on misrepresentations and deception regarding the price of accommodations (§ 559.9335(9)(c)) and on engaging "in any other act that constitutes fraud, misrepresentation, or failure to disclose a material fact,[10] or to commit any other violation of, or fail to comply with, this part." *Id.* at § 559.9335(23). Clearly, Plaintiffs' allegations in the Amended Complaint fall within these prohibitions and, accordingly, Priceline cannot apply a limitation of liability to them, pursuant to

---

[10] Because the Sellers of Travel Act imposes an affirmative duty to disclose material facts, the Second Circuit decision in *Johnson* becomes further distinguishable because it rested on a finding that there was no such duty under the facts of that case. Here, Defendants failed to disclose that they did not deliver the exclusive discounted rates promised by the AAA membership contracts.

the Act.[11] The same is true of the AAA Defendants, which are both registered under the Act[12] and are also covered under the Act as "other persons."

### XI.    General Contract Principles Apply to the Clickwrap Purported Terms, Further Confirming Their Invalidity

As discussed above, the application of any portion of the Purported Terms here is prohibited by the law governing the modification of contracts. To the extent Defendants attempt to argue that the law applicable to "clickwrap" agreements somehow alters this analysis, they are mistaken. In Florida, clickwrap agreements[13] are "examined by applying general contract principles." *Salco Distribs. LLC v. Icode, Inc.*, 2006 U.S. Dist. LEXIS 9483, at *7-8 (M.D. Fla. 2006). For a clickwrap agreement, or any portion of it, to be valid, its terms must be reasonably communicated to the plaintiff. *Diverse Elements, Inc. v. Ecommerce, Inc.*, 5 F.Supp.3d 1378, 1382 (S.D. Fla. 2014); *Meyer v. Kalanick*, 2016 U.S. Dist. LEXIS 99921, at *30 (S.D.N.Y. July 29, 2016) (Courts must embark on a fact-intensive inquiry in order to make determinations about the existence of reasonably conspicuous notice in any given case.). In other words, "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Specht v. Netscape Commcn's Corp.*, 306 F.3d 17, 29 (2nd Cir. 2002) (cited with approval in *IT Strategies Group, Inc. v. Allday Consulting Group, LLC*, 975 F.Supp.2d 1267, 1280 (S.D. Fla. 2013)). Failure to call attention to the existence of contract terms, let alone to the fact

---

[11] Leaving no doubt as to the prohibition on limitations of liability, the remedies provision of the Act states: "Any provision in a travel contract, certificate, vacation package, or other brochure or travel material from a seller of travel that purports to waive, limit, restrict, or avoid any of the duties, obligations, or prescriptions of the seller of travel, as herein provided, is void and unenforceable and against public policy, unless it is necessitated by contractual arrangements with travel service suppliers and fully disclosed." Fla. Stat. § 559.9336(6).

[12] Confirmed through search at:
https://csapp.800helpfla.com/cspublicapp/businesssearch/businesssearch.aspx.

[13] A clickwrap agreement on a Web site refers to the assent process by which a user must click "I agree," but not necessarily view the contract to which she is assenting. *Berkson v. Gogo LLC*, 97 F.Supp.3d 359, 394-95 (E.D.N.Y. 2015).

that the user was agreeing to them, is sufficient to find that the user did not have reasonably conspicuous notice of the terms. *Meyer*, 2016 U.S. Dist. LEXIS 99921, at *30-31.

A review of the above-cited cases and others addressing clickwrap agreements reveals several principles mandating the denial of Defendants' MTD as to Plaintiffs' breach of contract claim. First, the factual nature of establishing adequate notice in the context of clickwrap agreements makes their enforceability generally unsuited to resolution on a motion to dismiss. Second, the substantive issues of consent, unilateral modification, and consideration are all applicable to clickwrap agreements. Indeed, Defendants do not cite a clickwrap case which approved the type of unilateral contract modification attempted here, much less one which lacked any consideration.

Third and relatedly, the clickwrap process and the Purported Terms allegedly contained on AAA.com failed to give Plaintiffs notice of what Defendants argue that they were actually attempting: a modification of all AAA membership contracts intended to deprive Plaintiffs' and Class members' of one of the contracts' primary benefits – exclusive discounts on hotels. The most the Purported Terms do is claim to govern use of AAA.com – a site which AAA directed Plaintiffs and Class members to use in order to *realize* the travel benefits promised under their memberships. Moreover, whatever the Purported Terms attempt to convey, they do so in the course of a 12-page document written in dense legalese. Lengthy terms and conditions, couched in language unintelligible to the reasonable consumer and requiring much effort to view in their entirety have been primary factors in courts finding clickwrap terms unenforceable. *See, e.g., Specht*, 306 F.3d at 29-30; *Meyer*, 2016 U.S. Dist. LEXIS 99921, at *34 ("Further still, even if a user were to arrive at the Terms and Conditions, these terms…consist of nine pages of highly legalistic language that no ordinary consumer could be expected to understand.").

Finally, the Purported Terms, which appear to be derived from a template, do not even make clear that they apply to AAA.com. On their first page, the Purported Terms refer to "{site_name}", not "AAA.com." Dkt. 47, Ex. 1. This template placeholder is repeated throughout the Purported Terms, rendering the Purported Terms at best ambiguous and therefore inadequate from a notice standpoint. Defendants should be barred from enforcing Purported Terms in which they could not even be bothered to insert the name of the Web site the terms sought to govern.

Accordingly, the cases interpreting clickwrap agreements support Plaintiffs' arguments.

## XII.     Defendants' Additional Arguments Regarding the Sufficiency of Plaintiffs' Breach of Contract Allegations Also Fail[14]

### A.     The Purported Terms Cannot Be the Parties' Entire Agreement

Even assuming *arguendo* that Defendants were correct that the Purported Terms entirely displaced Plaintiffs' AAA membership contracts (which they did not for all the reasons discussed herein), Defendants' contention that the Purported Terms "constitute the parties' entire agreement" and "supersede any prior statements or representations" would still be wholly illogical. MTD at 14. By their own words, the Purported Terms at most govern use of the online booking feature *once a membership with Defendant AAA is already active*. As a matter of fact, consumers cannot benefit from the online booking tool until they have paid dues to AAA because a valid AAA Membership number is required to complete a booking on AAA.com at the "member rate." But the Purported Terms do not cover any aspect of Plaintiffs' AAA memberships nor contemplate their putative benefits, which were, *inter alia*, exclusive "member rates" and access to AAA staff

---

[14] Defendants make a host of additional arguments concerning Plaintiffs' breach of contract allegations. Most of these arguments rest on Defendants' incorrect premise that the Purported Terms are the operative contract in this case. Nevertheless, in the interest of accuracy, Plaintiffs address the fallacies of these arguments.

for travel booking. Accordingly, it is logically impossible for the Purported Terms to constitute the entire agreement between the parties.

At best, the Purported Terms are ambiguous as to the rights and obligations of each party regarding membership, permitting the Court to look beyond the Terms and back to the Handbook, FAQs and other materials that formed the basis of the contractual relationship. *See Phila. Am. Life. Ins. Co. v. Buckles*, 350 Fed. Appx. 376, 379-80 (11th Cir. 2009) (Court may look outside the four corners of a contract to resolve ambiguity) (quotation omitted). As discussed below, if the Court were to apply this analysis (which it need not do), Plaintiffs' Amended Complaint would still adequately allege a claim for breach of contract.

## 1.    Defendants Breached Promises In The Handbook and FAQs

The Handbook states that "Your membership offers exclusive discounted rates for a wide variety of AAA Diamond rated hotels worldwide. Easily reserve your hotel online, by phone or in person at your local AAA office with specially trained AAA Travel professionals. For more information visit AAA.com." *See* Handbook at 25; *see also id.*, at 27; Am. Complt., ¶ 67. As directed by the Handbook, Plaintiffs visited AAA.com, but, instead of receiving exclusive discounted rates for the hotels they booked, they were unknowingly overcharged by a system run not by AAA Travel Professionals but instead by Priceline. Am. Complt., ¶¶ 22-40. These allegations plainly state a claim for breach of the terms of the Handbook.

Similarly, the FAQs contain a very clear statement that no service fees would be charged: Q: "Is there a service fee when booking my reservation online at AAA.com?" A: "No". Am. Complt. Ex. H at 3. This is the information that was portrayed to Defendant AAA's members, including Plaintiffs, at the time Plaintiffs booked their travel through AAA.com. Defendants seek to disclaim this promise by arguing that Mrs. Rothstein did not see the FAQs until after using AAA.com but, as Plaintiffs allege, seeing the FAQs "simply confirmed Mrs. Rothstein's

16

understanding that AAA and Auto Club South never told members such fees would be charged and, in fact, that AAA and Auto Club South promised that members would receive exclusive and discounted rates for hotel bookings." Am. Complt., ¶ 31. Any reasonable consumer, including Plaintiffs, would interpret the representation Defendants made to the public to be an unambiguous promise that no service fees would be charged. Defendants breached this promise when they charged such fees anyway.

Further, when Plaintiffs first learned that such fees were charged, they contacted Defendant AAA and learned that AAA did in fact charge fees and wanted hotels to conceal this fact from AAA members. *Id.* at ¶ 33; *see also* Am. Complt. Ex. H. In response, Defendants point to the "Contract Pages," *see* Dkt. No. 47 Ex. 2, and a hyperlink that allegedly discloses "Taxes and Fees" as part of the hotel booking process through AAA.com. The information that appears when consumers click that hyperlink is reproduced below:



(Last accessed July 28, 2016, through AAA.com)

No reasonable consumer would understand the information Defendants provided on AAA.com to mean that service fees would be charged; at best, Defendants' language is ambiguous and should be construed against them. *RTG Furniture Corp. v. Indus. Risk Insurers*, 616 F.Supp.2d 1258, 1264 (S.D. Fla. 2008); *Hudson Specialty Ins. Co. v. N.J. Transit Corp.*, 2015 U.S. Dist.

LEXIS 73101, at *19 (S.D.N.Y. 2015). As shown above, Defendants never disclose how much charged is for taxes versus fees, or what the purported service fees actually comprise. Instead, Defendants baselessly claim that the Contract Pages "disclose[d] that Plaintiffs would be charged service fees…" MTD at 4. In fact, the hyperlinked information states only that "service fees are excluded from your room rate." Plaintiffs only learned that service fees would be charged at all when they spoke to a AAA representative on the telephone, after the fact, who told them that the hotels should not have disclosed that information. Am. Complt., ¶ 33.

Further, the specific language outlining which taxes will be charged stands in stark contrast to the utter silence regarding service fees. It is axiomatic that the expression of one term implies the exclusion of other terms not mentioned. *See City of Homestead v. Johnson*, 760 So.2d 80, 84 (Fla. 2000). By listing out all of the various taxes but remaining quiet on the supposed service fees, Defendants gave the impression (that, not coincidentally, lined up with the FAQs and Handbook, which either stated no fees would be charged or remained silent) that Plaintiffs would not pay service fees. Am. Complt. ¶ 30.

Nor did the undisclosed arrangement between AAA and Priceline authorize Defendants to include a third party vendor to charge fees to Plaintiffs without their consent. *See Ramos-Barrientos v. Bland*, 661 F.3d 587, 601 (11th Cir. 2011) (rejecting argument that "the authority given to a party to conduct certain administrative tasks implicitly conveys authority to a third party to charge fees for assistance with those tasks"). Plaintiffs did not know that Defendant Priceline was involved in their contract with Defendant AAA and thus communicated no manifestation of authority for Priceline to charge any such fees.

### B.    Plaintiffs Adequately Plead That They Have Standing To Bring a Claim

Defendants strain credulity by arguing that Plaintiffs have no standing because they fail to allege that they were AAA members when they booked their reservations. MTD at 15. Plaintiffs

did so plead, stating how and when Plaintiffs became members of AAA. Am. Complt. ¶¶ 17-18; *see Iqbal*, 556 U.S. at 679. Moreover, Plaintiffs would not have had access to book their hotels through AAA at the supposedly discounted "member rate" without a valid Membership number, which is required to book at "member rates" on Defendants' site. Defendants' protestations that Plaintiffs have no standing has no basis in fact or law.

### C.  Plaintiffs Adequately Allege That Defendants Breached Their Promise To Provide Exclusive Discounts At Rates Only Available To Members

Plaintiffs paid dues to Defendants in exchange for "member rates" with "exclusive AAA member savings." Am. Complt., ¶¶ 15, 19, 25. Defendants represent on AAA.com and in their membership materials that members like Plaintiffs would indeed receive such rates "for a wide variety of AAA diamond-rated hotels worldwide." *Id.* at ¶¶ 16. As these representations induced Plaintiffs to pay for the membership, Plaintiffs plead that Defendants breached their obligation when Defendants charged Plaintiffs a higher rate than was publicly available – a fact revealed to Plaintiffs by the hotels themselves. *Id.* at ¶¶ 26-28.

Yet Defendants speciously argue that they were bound only to "offer" exclusive discounted rates or otherwise to "get access to" such rates, which is different than stating "that Plaintiffs would *always* obtain 'exclusive discounted rates' simply by booking a hotel reservation via AAA.com." MTD at 17. Thus, Defendants argue, they did not breach their promise because Plaintiffs did not receive a "specific level" of discounts with respect to their hotel reservations, because such rates may not have been available "at the specific date and time" Plaintiffs booked their hotel. *Id.* This inartful dodging again intentionally misconstrues Plaintiffs' claim: Defendants promised exclusive, discounted rates to Plaintiffs, but Plaintiffs paid more expensive rates than were available to the public at large *for the same bookings*, not in isolation but at three different hotels. Am. Complt. ¶¶ 19, 25-28; *see Marty v. Anheuser-Busch Cos.*, 43 F.Supp.3d 1333, 1347 (S.D. Fla.

2014) (motion to dismiss denied where plaintiffs paid for a product based on misrepresentations made about that product).

Plaintiffs plead that hotel staff informed them that lower rates were available to the public than Plaintiffs' received through AAA.com. *Id.* at ¶¶ 26-27. Further, when Plaintiffs entered into their membership contracts, they understood that the benefits of membership would be available to them throughout the pendency of their membership, for all times during which they chose to remain dues-paying members – not, as Defendants argue, only when Defendants chose to deliver such benefits. *Id.* at ¶¶ 19, 30. Plaintiffs allege that Defendants failed to provide such benefits to Plaintiffs; as such, they adequately plead a breach of the promise to provide exclusive discounted rates.

### D.  Plaintiffs Adequately Allege That Defendants Breached Their Promise To Provide Services Without Use Of A Third Party

Plaintiffs bargained for the provision of services through AAA rather than a third party, Priceline, which was not party to the membership contracts. The Handbook explicitly states that members "book [their] stay through AAA" and that "**specially trained AAA Travel Professionals**" provide such services, **whether "online, by phone or in person**…" Am. Complt. ¶¶ 58, 68 (emphasis added); *see also* Am. Complt. Ex. A at 27. Further, that AAA.com rates are only accessible via Defendant Priceline necessarily means that the rates offered are not "exclusive." Am. Complt. ¶ 1. Reasonable consumers who purchase a membership to receive exclusive rates "through AAA" would not expect that AAA.com would be operated by a third party offering the same rates to anyone accessing its own, separate Web site. Accordingly, Defendant AAA breached its promise to provide exclusive discounted rates to Plaintiffs.

### IX.    Plaintiffs Adequately Plead A Claim Under N.Y. General Business Law §349

"To establish a violation of [New York General Business Law] §349, a plaintiff must prove [i] that the challenged act or practice was consumer-oriented; [ii] that it was misleading in a material way; and [iii] that the plaintiff suffered injury as a result of the deceptive act." *Dimond v. Darden Rests., Inc.*, 2014 U.S. Dist. LEXIS 94004, at *13 (S.D.N.Y. 2014) (internal quotation omitted). "To determine whether conduct may be deceptive under §349, courts apply an objective standard," *Dimond, id.* (internal quotation omitted), which asks whether the "representation or omission [is] likely to mislead a reasonable consumer acting reasonably under the circumstances." *Dimond, id.* at *14 (internal quotation omitted).

Plaintiffs, who reside out of New York state, may bring a §349 claim. *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 123 (2nd Cir. 2013) ("the appropriate test…is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties.") (internal quotation omitted)). Section 349 "was not 'intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state.'" *Cruz*, 720 F.3d at 123.

Here, Plaintiffs allege that Defendants AAA and Priceline have both done business in New York County, New York. Am. Complt. ¶¶ 6, 8. Defendants availed themselves of New York law by voluntarily drafting provisions requiring consent to New York jurisdiction and applying New York law to the membership contracts. *Id.* at ¶ 53. They also offer travel booking services to consumers in New York, including Class members. Accordingly, Defendants created a sufficient nexus between the deceptive transactions of which Plaintiffs complain and the law of New York.

Plaintiffs also plead a bevy of deceptive acts that subject Defendants to §349 liability. *See* Am. Complt. ¶¶ 59-63, 75-76. Such acts include a failure to disclose fees, provide discounts

21

advertised and marketed, and to disclose the entity actually providing services to Plaintiffs and Class members. *Id.* The focus of Plaintiffs' claim is Defendants' "falsely and misleadingly overcharging Plaintiffs and the Class for hotel bookings" by not providing the exclusive savings promised *by the membership contracts*. *Id.* at ¶ 75. The Handbook, which formed part of Plaintiffs' membership contracts, promised "exclusive discounted rates" and reservations "with specially trained AAA Travel professionals." *Id.* at ¶ 67. No reasonable consumer would thus expect a third party, Priceline, to process the hotel reservations and charge both higher rates and service fees to do so. Further, the billing summary that Defendants claim sets forth all taxes and fees (which was provided only subsequently to the membership contracts) to actually continues to hide what, if any, fees were to be charged. *See, supra,* § VIII(i); *cp. Watts v. Jackson Hewitt Tax Serv.*, 579 F.Supp.2d 334, 347-48 (E.D.N.Y. 2008). Accordingly, Defendants misled Plaintiffs, acting as reasonable consumers under the circumstances, into believing that they would receive the benefits of their memberships. *See Dimond*, 2014 U.S. Dist. LEXIS 94004 at *14.

Defendants' cite to *Weinstein v. Ebay, Inc.*, 819 F.Supp.2d 219 (S.D.N.Y. 2011), for the proposition that a consumer cannot base a §349 claim on the allegation that she "could have purchased something for a lower price through another vendor." MTD at 24. But this mischaracterizes the nature of the relationship between Plaintiffs and AAA, whose membership materials induce consumers to enter into contracts requiring payment of dues up front in exchange for the promise of exclusive discounts later – discounts which they do not receive. Am. Complt. ¶ 68. By describing Defendants' deceptive acts and showing a nexus between them and the state of New York, Plaintiffs adequately allege a §349 claim.

XIII.     **Plaintiffs Adequately Allege That Defendants Breached The Duty of Good Faith and Fair Dealing**

New York law implies a covenant of fair dealing and good faith in all contracts. *EUA Cogenex Corp. v. North Rockland Cent. Sch. Dist.*, 124 F.Supp.2d 861, 873 (S.D.N.Y. 2000). "The boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract." *Id.* (quoting *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 866 F.2d 497, 502 (2nd Cir. 1989)). Here, Defendants' admitted attempt to unilaterally modify the AAA membership contracts to deprive Plaintiffs of promised discounts is a textbook example of a bad faith scheme by one party to deprive the other of contractual benefits. The AAA Defendants thus breached their duty of good faith and fair dealing to Plaintiffs.

XIV.     **Plaintiffs Adequately Allege Unjust Enrichment**

In New York, "a claim for unjust enrichment requires that "the defendant benefitted...at the plaintiff's expense [and] ...that equity and good conscience require restitution." *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 U.S. Dist. LEXIS 94896, at *11 (S.D.N.Y. 2015).[15] "The essence of a cause of action for unjust enrichment is that one party possesses money...that in equity and good conscience...should not have [been] obtained or possessed because it rightfully belongs to another." *Id.* Plaintiffs may plead such claims in the alternative, in the event the Court determines that no contract was formed. *Id.* at *4.[16]

Plaintiffs allege that Defendants failed to provide Plaintiffs with exclusive discounted rates for hotel bookings, overcharged for such bookings, and collected unauthorized and undisclosed

---

[15] The elements in Florida are similar: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) absence of a justification for the enrichment and the impoverishment, and (5) an absence of remedy provided by law. *In re Horizon Organic Milk Mktg. & Sales Practice Litig.*, 955 F.Supp.2d 1311, 1337 (S.D. Fla. 2013).

[16] In the event that the Court determines that Plaintiffs' unjust enrichment pleadings are insufficient, Plaintiffs request leave to amend as is the "usual practice" in such matters. *TransformaCon*, 2015 U.S. Dist. LEXIS 94896, at *5-6.

fees for hotel bookings from Plaintiffs through AAA.com, and in doing so "retained a portion of the overcharges collected from Class members." Am. Complt. ¶ 86. Further, "[w]hen reviewing a complaint for sufficiency of the allegations, the Court must review the complaint 'as a whole in context.'" *In re Zinc Antitrust Litig.*, 2016 U.S. Dist. LEXIS 73192, at *53 n. 17 (S.D.N.Y. June 6, 2016) (quotation omitted). Reviewing Plaintiffs' complaint in its entirety demonstrates that a claim for unjust enrichment claim in the alternative is adequately pled.

**XV.        Plaintiffs' Class Claims are Not Defective**

Defendants argue on the last page of their MTD that Plaintiffs' class action claims are defective and should be dismissed because some Class members might be subject to a statute of limitations defense and others to an arbitration clause that Defendants have sought to impose since this case was filed (without notice and in an effort to further curtail AAA members' rights). Defendants are wrong at a number of levels and their argument should be rejected. First, Defendants' argument is actually a veiled motion to strike class allegations. Such motions are highly disfavored at the pleadings stage and have been repeatedly rejected by courts. *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113 (S.D.N.Y. 2012) (citations omitted). Second, both arguments are premised on the enforceability of Defendants' Purported Terms. As discussed at length herein, the Purported Terms are unenforceable. Finally, Defendants' concede that their arguments, even if correct, would only "partially" bar Class members' claims. Thus, there is no basis for dismissing Class members' claims in their entirety, particularly where Defendant's alleged statute of limitations and arbitration clause defenses would be common issues as to the limited subsets of Class members' affected.

## CONCLUSION

For the reasons stated above, this Court should deny Defendants' MTD in its entirety or, in the alternative, permit Plaintiffs to amend their pleadings.

DATED:  August 2, 2016                    Respectfully submitted,


*/s/ Jayne A. Goldstein*
Jayne Arnold Goldstein
**POMERANTZ LLP**
1792 Bell Tower Lane
Weston, FL 33326
Telephone: 954-315-3454
Facsimile: 954-315-3455
jagoldstein@pomlaw.com


 Noah Axler
**AXLER GOLDICH, LLC**
One Liberty Place
1650 Market Street, 36th Floor
Philadelphia, Pennsylvania 19103
(267) 207-2920
naxler@axgolaw.com


*Attorneys for Plaintiffs and the Class*