USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __8/26/2019__

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Iris Rothstein, on behalf of herself and all
others similarly situated,

                                        Plaintiff,

                -against-

Auto Club South et al.,

                                        Defendants.

1:15-cv-09391 (LAK) (SDA)

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE:**

Before the Court are motions for summary judgment by (1) Defendants Auto Club South

("Club South") and Auto Club Group ("ACG") (collectively, the "ACG Defendants"); (2) Defendant

American Automobile Association ("AAA"); and (3) Defendants Priceline.com, Priceline Partner

Network Limited, Priceline.com LLC, and Priceline.com Inc. d/b/a Booking Holdings, Inc.

(collectively "Priceline," and together with all defendants, "Defendants").[1] (ACG Defs. Not. of

---

[1] In connection with Defendants' summary judgment motions, the Court has considered Defendants' memoranda of law (ACG Defs. Mem., ECF No. 143; AAA Mem., ECF No. 145; Priceline Mem., ECF No. 138); Defendants' 56.1 Statements (ACG Defs. 56.1, ECF No. 144; AAA 56.1, ECF No. 142; Priceline 56.1, ECF No. 139); Defendants' moving Declarations, together with their exhibits (Chronis Decl., ECF No. 135; Sims Decl., ECF No. 136; Ginter Decl., ECF No. 141; Mauer Decl., ECF No. 140); Plaintiff's opposition memoranda of law (Mem. Opp. ACG Defs., ECF No. 171; Mem. Opp. AAA, ECF No. 168; Mem. Opp. Priceline, ECF No. 174); Plaintiff's Responses and Counterstatements to Defendants' 56.1 Statements (Pl. Resp. & Counter ACG Defs. 56.1, ECF No. 177; Pl. Resp. & Counter AAA 56.1, ECF No. 182; Pl. Resp. & Counter Priceline 56.1, ECF No. 176); Plaintiff's opposing Declarations, together with their exhibits (Axler Decl., ECF No. 169; Rothstein Decl., ECF No. 170); Defendants' reply memoranda of law (ACG Defs. Reply, ECF No. 204; AAA Reply, ECF No. 205; Priceline Reply, ECF No. 203); Defendants' Responses to Plaintiff's 56.1 Counterstatements (ACG Defs. Resp. to Counter 56.1, ECF No. 204-1; AAA Resp. to Counter 56.1, ECF No. 205-1; Priceline Resp. to Counter 56.1, ECF No. 203-1); and Defendants' reply Declaration, together with its exhibits. (Murarova Decl., ECF No. 206.)

Mot., ECF No. 133; AAA Not. of Mot., ECF No. 134; Priceline Not. of Mot., ECF No. 137.) Also

before the Court are Plaintiff's motion for class certification (Pl. Class Not. of Mot., ECF No. 130),

and a related motion by Defendants to strike and/or exclude opinions and testimony offered by

Plaintiff's expert in support of class certification. (Defs. Not. of Mot. To Strike, ECF No. 185.)

      For the reasons set forth below, I recommend that Defendants' motions for summary

judgment be GRANTED and that this case be dismissed. I also recommend that Plaintiff's motion

for class certification and Defendants' motion to strike and/or exclude be DENIED as moot.

## PROCEDURAL HISTORY

      Iris Rothstein, along with her husband Stanley Rothstein, filed this action in the United

States District Court for the Southern District of Florida on September 2, 2015 and on December

1, 2015 it was transferred on consent to this Court pursuant to 28 U.S.C. § 1404. (Compl., ECF No.

1; Agreed Order, ECF No. 21; Case Transfer, ECF No. 22.) The Rothsteins filed an Amended

Complaint on April 22, 2016. (Am. Compl., ECF No. 39.) On July 6, 2016, Defendants filed a motion

to dismiss the Amended Complaint. (MTD Not. of Mot., ECF No. 45.) On April 13, 2017, Judge

Kaplan granted Defendants' motion as to the claim pursuant to New York General Business Law

§ 349, but denied the motion with respect to the breach of contract and unjust enrichment

claims. (MTD Mem. Opinion, ECF No. 70.)

      Plaintiff Iris Rothstein (hereinafter, "Plaintiff") filed a Second Amended Complaint on

October 25, 2018.[2] (Second Am. Compl. ("SAC"), ECF No. 115.) Plaintiff alleges in the SAC that

she was charged "unauthorized and undisclosed charges and fees" for three hotel reservations

---

[2] The parties stipulated to the dismissal of Stanley Rothstein as a plaintiff (Joint Stip., ECF No. 111), so the
SAC named Iris Rothstein as the sole Plaintiff.

she made on AAA.com and did not receive the "exclusive discounted rates" she was promised as part of her AAA membership. (*Id*. ¶¶ 1, 15.) Plaintiff asserts claims for breach of contract, breach of the duty of good faith and fair dealing and unjust enrichment against Club South, ACG and AAA and for unjust enrichment against Priceline. (*Id*. ¶¶ 3, 62-93.)

The ACG Defendants and Priceline filed Answers on November 27, 2018 (ACG Defs. Answer, ECF No. 121; Priceline Answer, ECF No. 120), and AAA filed its Answer on December 3, 2018. (AAA Answer, ECF No. 122.) On January 14, 2019, Defendants filed their motions for summary judgment that are now before the Court. (ACG Defs. Not. of Mot.; AAA Not. of Mot.; Priceline Not. of Mot.) Also on January 14, 2019, Plaintiff filed her motion for class certification. (Pl. Class Not. of Mot.) Defendants filed their motion to strike on April 17, 2019. (Defs. Not. of Mot. to Strike.)

Oral argument was held on August 20, 2019 with respect to all the pending motions. (8/20/19 Tr., ECF No. 217.)

## RELEVANT FACTS

AAA is a federation of automobile clubs with regional member clubs throughout the United States. (SAC ¶ 16; Pl. Resp. & Counter ACG Defs. 56.1 ¶ 2.) Since at least 2010, Plaintiff (a resident of Florida) has been a member of Auto Club South, the regional AAA club servicing Florida, Tennessee, Georgia and Puerto Rico. (SAC ¶¶ 5, 19, 25; Pl. Resp. & Counter ACG Defs. 56.1 ¶¶ 1, 10; Pl. Resp. & Counter Priceline 56.1 ¶ 7.) As a Club South member, Plaintiff paid annual dues to Club South in return for receiving membership benefits, including roadside assistance and travel-related benefits. (SAC ¶¶ 18, 20; Pl. Resp. & Counter ACG Defs. 56.1 ¶ 5; Mem. Opp. AAA at 10.)

In October 2013, AAA and ACG (on behalf of itself and Club South)[3] entered into a Master Agreement with Priceline for the operation and management of the hotel reservation tool ("Hotel Reservation Tool") on the Club South website[4] and the websites for the other regional clubs that are part of ACG (together, the "ACG Websites"). (Pl. Resp. & Counter ACG 56.1 ¶ 13; Pl. Resp. & Counter Priceline 56.1 ¶ 10.) Priceline operated the Hotel Reservation Tool on the ACG Websites in 2014 at the time that Plaintiff made her hotel reservations at issue in this case. (*See* SAC ¶¶ 1, 43-49.)

When a user logs on to one of the ACG Websites (including the Club South website) to make a hotel reservation, the user is redirected to a site that is branded for AAA.com, but is operated by Priceline. (*See* SAC ¶ 49; Pl. Resp. & Counter Priceline 56.1 ¶¶ 9-10; Mauer Tr., Chronis Decl. Ex. 9, ECF No. 147-10, at 59; Barber Tr., Chronis Decl. Ex. 10, ECF No. 147-11, at 78-79.) When a user runs a search for a hotel reservation, the Hotel Reservation Tool returns results based on available rates from a variety of sources, which could include, among others, a rate that Priceline negotiated directly with the hotel (the "Priceline Merchant Rate"), or a rate that AAA negotiated directly with the hotel (the "AAA Member Rate").[5] (*See* Pl. Resp. & Counter ACG Defs. 56.1 ¶¶ 18, 19; Pl. Resp. & Counter AAA 56.1 ¶ 11.)

---

[3] ACG oversees a number of different regional clubs, including Club South. (Pl. Resp. & Counter Priceline 56.1 ¶ 5.) Club South merged with ACG in November 2014. (*Id.* ¶ 6.)

[4] Each AAA regional club has its own "AAA.com" website. (*See* Pl. Resp. & Counter ACG 56.1 ¶ 13 (not disputing that each regional club has its own website, but only disputing the entity that "manages" the website).) When users access "AAA.com" they are either automatically directed to the AAA.com website for the regional club which services the region in which they reside, or they must enter their zip code, after which they are directed to the AAA.com website for the regional club servicing that zip code. (*Id.* ¶¶ 14, 15.)

[5] Other rates also may be available using the Hotel Reservation Tool. (*See* Mauer Tr. at 32-35, 41-44; Hager Tr., Chronis Decl. Ex. 12, ECF No. 147-13, at 57-60, 78; Barber Tr. at 12-13, 108-09, 177-78.)

Priceline Merchant Rates are available to the general public both through AAA.com and Priceline.com. (Nemes Tr., Chronis Decl. Ex. 12, ECF No. 147-13, at 106, 116, 119-20.) When a user books a Priceline Merchant Rate, Priceline is the ███████████████████████ ████████████████████ (Mauer Tr. at 61, 66-67.) Priceline charges the purchaser a processing fee. (*Id*. at 59, 74, 80.) Priceline retains████████████████████ but also pays a███████to███████████████████████ (*See id*. at 44, 63-64, 77.)

With respect to AAA Member Rates, AAA██████████████████to obtain discounted rates for regional club members. (Barber Tr. at 106, 115, 137-38, 142-44, 152-53, 177.) AAA entered into Preferred Partner Marketing Agreements ("Partner Agreements")███ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████ Under the Partner Agreements, the hotels agreed to ██████████████████████ ████████████████████████████████████████ ███████████ In addition, the Partner Agreements state that,██████████████ ████████████████████████████████████████ ████████████████████████ *see also* Barber Tr. at 164, (AAA Member Rates "are rates specifically for AAA members that [] have to identify themselves to receive that discount."), 177; Hager Tr. at 44 ("[M]ember rates [are] served up where a membership number or card will be needed at hotel check-in."), 77-78.) The Partner Agreements

further provide that ███████████████████████████████████████████

████████████████████████████████████████████████

No fees are charged for booking AAA Member Rates. (Mauer Tr. at 59-60, 61-62; Hager Tr. at 18-20.) However, the hotel pays ████████████ based on the booking, and Priceline pays a ████████ to ██████████████████ (Mauer Tr. at 62-63, 64; Nemes Tr. at 36-37, 116.)

In June 2014, Plaintiff made three hotel reservations using the Club South website. (SAC ¶¶ 29, 30, 31; Rothstein Tr., Chronis Decl. Ex. 8, ECF No. 147-9, at 57-58.)[6] First, Plaintiff booked a room at The Homewood Suites by Hilton in Middletown, Rhode Island, for June 20, 2014 through June 27, 2014. (SAC ¶ 30.) Plaintiff prepaid a nightly rate of $141.55, plus $128.03 in "taxes and fees,"[7] for a total cost of $1,118.88. (SAC ¶¶ 30, 31; SAC Ex. B.) Plaintiff alleges that when she checked in to the hotel, the front desk clerk told her that if she had booked with the hotel directly, she would have been charged less, and gave her an itemized statement showing a

---

[6] Plaintiff's counsel stated that he did not know whether AAA Member Rates were available to Plaintiff when she made these reservations. (*See* 8/20/19 Tr. at 38.)

[7] The "taxes and fees" line for this booking on the website, as well as the other two reservations Plaintiff made, was an active hyperlink. (*See* Ginter Decl. at ¶¶ 5, 8-9.) When clicked, a user was shown the following disclosure:

> In connection with facilitating your hotel transaction, the charge to your debit or credit card will include a charge for Taxes and Fees. . . . The amount paid to the hotel in connection with your reservation for taxes may vary from the amount we estimate and include in the charge to you. The balance of the charge for Taxes and Fees is a fee we retain as part of the compensation for our services and to cover the costs of your reservation, including, for example, customer service costs. The charge for Taxes and Fees varies based on a number of factors including, without limitation, the amount we pay the hotel and the location of the hotel where you will be staying, and may include profit that we retain. . . .

(Ginter Decl. at ¶¶ 8-9).

nightly rate of $118.90, plus $108.15 ($15.45 per night) in state and lodging taxes, for a total charge of $940.45. (*See* SAC ¶ 33; Rothstein Tr. at 266-74; SAC Ex. E.)

Next, Plaintiff booked a room at The Hampton Inn White River Junction in White River Junction, Vermont, for July 17, 2014 through July 21, 2014. (SAC ¶ 30.) She prepaid a nightly rate of $130.90, plus $50.08 in "taxes and fees," for a total cost of $573.68. (SAC ¶¶ 30, 31; SAC Ex. C.) Plaintiff alleges that when she went to the hotel, she was informed that if she had booked with the hotel directly, the total charge would have been $479.44, based on a nightly rate of between $106.39 and $113.53, plus Vermont occupancy tax. (SAC ¶ 34; Rothstein Tr. at 298-302; SAC Ex. F.)

Finally, Plaintiff booked a room at The Holiday Inn Express in Springfield, Vermont, for July 21, 2014 through July 24, 2014. (SAC ¶ 30.) Rothstein prepaid a nightly rate of $122.21 plus $35.37 in "taxes and fees" for a total cost of $402.00. (SAC ¶¶ 30, 31; SAC Ex. D.) Rothstein alleges that when she went to the hotel, she was informed that if she had booked directly with the hotel the total charge would have been $339.66, based on a nightly rate of $103.88 plus tax. (SAC ¶ 34; Rothstein Tr. at 305-11; SAC Ex. G.)

Each of the three rates booked by Rothstein was a Priceline Merchant Rate, for which she was charged a processing fee by Priceline and for which Priceline paid a commission to Club South. (*See* Pl. Resp. & Counter AAA 56.1 ¶¶ 46, 51, 53; Barber Tr. at 176, 178; Nemes Tr. at 119-20) At the time Rothstein made these reservations, the operative Auto Club South AAA Member Benefits Handbook ("Club South Handbook") stated:

> When you travel, rest assured that you are getting a great hotel value when you book your stay through AAA. Your membership offers exclusive discounted rates for a wide variety of AAA Diamond rated hotels worldwide. Easily reserve your

hotel online, by phone or in person at your local AAA office with specially trained AAA Travel professionals.

For more information, visit AAA.com.

(Club South Handbook, SAC Ex. A, at 25.)

## LEGAL STANDARDS

### I.     Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist*., 963 F.2d 520, 523 (2d Cir. 1992) (quoting *Anderson*, 477 U.S. at 248). In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Anderson*, 477 U.S. at 255.

To defeat summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Anderson*, 477 U.S. at 249-50. Indeed, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006) (quoting Fed. R. Civ. P. 56(e)).

## II.    __Breach Of Contract__

Under Florida law,[8] the elements of a claim for breach of contract are: (1) a valid contract;

(2) a material breach; and (3) damages. *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLP*, 137 So. 3d

1081, 1094-95 (Fla. Dist. Ct. App. 2014). "In order to allege a material breach in accordance with

the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must

allege which provision of the contract has been breached." *Pierce v. State Farm Mut. Auto. Ins.*

*Co.*, No. 14-CV-22691, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014).

The interpretation of a written contract, including the question of whether a contract is

ambiguous, is a matter of law. *Mariposa Assocs., Ltd. v. Regions Bank*, No. 13-CV-23838, 2015 WL

1478652, at *6 (S.D. Fla. Mar. 31, 2015), *aff'd*, 696 F. App'x 438 (11th Cir. 2017). "If the contract

is unambiguous, it must be interpreted in accordance with its plain meaning so as to give effect

to the contract as a whole." *Disa v. Ashley Furniture Indus., Inc.*, 131 F. Supp. 3d 1316, 1320 (M.D.

Fla. 2015) (citing *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013)). "If a

contract is susceptible to more than one reasonable interpretation and cannot be reasonably

reconciled, the contract is deemed ambiguous and rules of contract interpretation must be

applied." *Disa*, 131 F. Supp. 3d at 1320 (citations and internal quotations omitted).

When interpreting a contract under Florida law, "the actual language used in the contract

is the best evidence of the intent of the parties and, thus, the plain meaning of that language

controls." *Rose v. M/V "GULF STREAM FALCON,"* 186 F.3d 1345, 1350 (11th Cir. 1999); *see also*

*Compagnie Financiere De CIC Et De L'Union Europeenne,* 232 F.3d 153, 157 (2d Cir. 2000) (court's

primary objective in interpreting contract is to give effect to intent of parties as revealed by

---

[8] The parties agree that Florida law applies to the contract-related claims. (*See* 8/20/19 Tr. at 11.)

language of agreement). A contract "interpretation is not reasonable if it requires rewriting the contract to add language that a party omitted and in order to impose an obligation on the other party that was not in the original bargain." *John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 F. App'x 396, 399 (11th Cir. 2011); *see also BMW of N. Am., Inc. v. Krathen*, 471 So. 2d 585, 587 (Fla. Dist. Ct. App. 1985) ("[W]here a contract is silent as to a particular matter, courts should not, under the guise of construction, impose on parties contractual rights and duties which they themselves omitted.").

III.   **Breach Of Duty Of Good Faith And Fair Dealing**

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing that protects 'the reasonable expectations of the contracting parties in light of their express agreement.'" *Alhassid v. Bank of Am., N.A.*, No. 14-CV-20484, 2015 WL 11110557, at *8 (S.D. Fla. Nov. 4, 2015) (quoting *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012)). The implied doctrine is not a separate cause of action but is used as "'a gap-filling default rule,' which comes into play 'when a question is not resolved by the terms of the contract.'" *Speedway SuperAmerica, LLC v. Tropic Enterprises, Inc.*, 966 So. 2d 1, 3 (Fla. Dist. Ct. App. 2007); *see also Stallworth v. Hartford Ins. Co.*, No. 06-CV-00089, 2006 WL 2711597, at *5 (N.D. Fla. Sept. 19, 2006). "The Florida District Courts of Appeal have held unequivocally that the rights conferred by the implied covenant of good faith and fair dealing are limited." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999).

"The implied obligation of good faith cannot be used to vary the terms of an express contract." *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. Dist. Ct. App. 1997). Nor can it "add an obligation to the contract which was not negotiated by the parties and not in

the contract." *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998). The claim "must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Burger King*, 169 F.3d at 1316 (internal quotations omitted).

To establish a breach of the implied covenant, "the party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000).

## IV.    Unjust Enrichment

In order to maintain a cause of action for unjust enrichment under Florida law,[9] a Plaintiff must show the following elements: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff." *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 693 (Fla. Dist. Ct. App. 2018) (internal quotations omitted). "An

---

[9] Plaintiff asserts Florida law applies to her unjust enrichment claim against each Defendant. (SAC ¶¶ 86-93.) However, Priceline asserts that its dispute with Plaintiff should be governed by New York law in accordance with Priceline's Terms and Conditions to which it alleges Plaintiff assented when booking the subject hotel rooms. (Priceline's SAC Answer, ECF No. 120, ¶ 14; Priceline Mem. at 12, n.10; 8/20/19 Tr. at 11-12.) The Court need not choose between the Florida and New York law, however, since there are no material differences in the Florida and New York law regarding unjust enrichment. *See infra*.

action for unjust enrichment exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So. 2d 710, 711 (Fla. Dist. Ct. App. 1988) (internal citations omitted). Under New York law, in order to adequately plead an unjust enrichment claim, the plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotation omitted).

Where an unjust enrichment claim is based upon the same set of facts as a breach of contract claim, the claim necessarily fails. *See Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. Dist. Ct. App. 2008) ("Florida courts have held that a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter. . . . We agree that appellee's unjust enrichment claim was precluded by the existence of an express contract between the parties concerning the same subject matter." (internal citations omitted)); *see also Cox v. NAP Const. Co. Inc.*, 10 N.Y.3d 592, 607 (2008) (under New York law, "a party may not recover in . . . unjust enrichment where the parties have entered into a contract that governs the subject matter").

## DISCUSSION

## I.     Summary Judgment Should Be Granted To The ACG Defendants On Plaintiff's Breach Of Contract Claim

In Counts I and II of the SAC, Plaintiff asserts breach of contract claims against the ACG Defendants, *i.e.*, Club South and ACG. (SAC ¶¶ 62-85.) With respect to the first element of her

breach of contract claim against the ACG Defendants — whether a valid contract exists — Plaintiff asserts that she:

> had a membership contract with Auto Club South and Auto Club Group, at the time Plaintiff booked the three hotel reservations described in the [SAC] . . . [and] the benefits of Auto Club South membership were described in the Auto Club South Member Handbook . . . which is part of Plaintiff's membership contract with Auto Club South and Auto Club Group.

(Mem. Opp. ACG Defs. at 2-3.) The ACG Defendants do not dispute that the Club South Handbook is a valid contract between Plaintiff and the ACG Defendants.[10] (ACG Defs. Mem. at 19 ("Here, Plaintiff and ACG/Club South have a contract: the Club South member handbook.").)

Plaintiff and the ACG Defendants dispute the second element of Plaintiff's breach of contract claim, *i.e.*, whether the provisions of the Club South Handbook have been breached. Thus, the issue before the Court is whether a genuine issue of material fact exists as to whether Plaintiff breached provisions the Club South Handbook.

Plaintiff asserts two theories of breach. First, she alleges that the ACG Defendants failed to provide "exclusive discounted rates" promised in the Club South Handbook. (Mem. Opp. ACG Defs. at 2-3, 5; 8/20/19 Tr. at 37 ("MR. AXLER: Plaintiff claims that her membership contract was breached because she didn't receive exclusive rates on AAA rated hotels.").) Second, she alleges that she "was never informed" about and never agreed to pay "processing fees, markups, and

---

[10] Plaintiff concedes that she is not herself asserting contractual claims under the handbook for the AAA regional club covering Illinois and Northern Indiana that is referenced in paragraph 67 of the SAC. (*See* Mem. Opp. ACG Defs. at 13-14.) She also concedes that she is not asserting contractual claims under the Frequently Asked Questions ("FAQs" or "FAQ") section of the AAA website that is referenced in paragraph 71 of the SAC. (*Id.* at 15 ("Plaintiff does not allege that the FAQs are a contract").) The single FAQ from the AAA website that is referenced by Plaintiff states "Is there a service fee when booking my reservation online at AAA.com? No." (SAC Ex. H.) Plaintiff admitted at her deposition that she had not read or relied upon the FAQs prior to making her hotel reservations. (Rothstein Tr. at 58, 338-39.)

commissions" for booking her reservations through the Club South website. (Mem. Opp. ACG Defs. at 3; *see also* 8/20/19 Tr. at 37.) The Court considers these two theories in turn below.

### A.      Exclusive Discounted Rates

The relevant provision of the Club South Handbook provides: "Your membership offers exclusive discounted rates for a wide variety of AAA Diamond rated hotels worldwide." (Club South Handbook at 25.) In moving for summary judgment, the ACG Defendants assert that "ACG and Club South performed their alleged contractual promise because they do, in fact, offer 'exclusive discounted rates for a wide variety of AAA diamond rated hotels worldwide' which are made available to [AAA] members online, in person, and over the phone." (ACG Defs. 56.1 ¶ 39.) Defendants do not contend that all their rates are exclusive and discounted. Rather, they contend that they have met their contractual obligations because some rates (*i.e.*, AAA Member Rates) are exclusive and discounted and those rates offered at a wide variety of hotels. (ACG Defs. Mem. at 10-11; 8/20/19 Tr. at 16.)

As evidence that they offer exclusive discounted rates at a wide variety of hotels, the ACG Defendants cite in their 56.1 Statement (ACG Defs. 56.1 ¶ 39) to testimony of two witnesses, as well as documentary proof. The witness testimony cited by the ACG Defendants (ACG Defs. 56.1 ¶ 39) is evidence that exclusive rates were offered. Stacy Barber, AAA's managing director of travel technology and data, testified that AAA ████████████████████████ ██████ to obtain discounted rates for regional club members (Barber Tr. at 106, 115, 137-38, 142-44, 152-53) and that AAA Member Rates "are rates specifically for AAA members that [ ] have to identify themselves to receive that discount." (*Id*. at 164.) Steven Hager, ACG's ethics program manager, testified that the Hotel Reservation Tool displayed AAA Member Rates, *i.e.*, rates

"where a membership number or card will be needed at hotel check-in." (Hager Tr. at 44, 77-78, 80, 81.)

As evidence of discounted rates, the ACG Defendants cite in their 56.1 Statement (ACG Defs. 56.1 ¶ 39) to a document from the AAA ███████████████████████████████ which discusses the discounts negotiated by ████████████████████████████████████████ ███████████ (Chronis Decl. Ex. 7, ECF No. 147-8.) As evidence that the rates were available at a wide variety of hotels, the ACG Defendants cite to an internal AAA document, dated April 8, 2016, which reflects that in 2014, ███████████████████████████████████████████████ ███████████████ (AAA Hotel Sales, Chronis Decl. Ex. 4, ECF No. 147-4, at 4.) They also cite to a summary of transaction reports for reservations booked through the Hotel Reservation Tool, which reflects that between March 2014 and March 2015 consumers used the Hotel Reservation Tool to book ██████████████████████████████████████████████████████████[11] (Hotel Reservation Tool Spreadsheet, Chronis Decl. Ex. 6, ECF No. 147-7.)

Plaintiff, over the course of nine pages, "disputes" the ACG Defendants' well supported 56.1 statement regarding the offering of exclusive discounted rates for a wide variety of hotels. In doing so, Plaintiff makes the following points:

1)   Plaintiff made her reservations in 2014 at three Diamond rated hotels, but unwittingly paid the Priceline Merchant Rate, not the AAA Member Rate. (Pl. Resp. & Counter ACG Defs. 56.1 ¶ 39 at 66, 70.)

---

[11] Exhibit 6 to the Chronis Declaration is an Excel spreadsheet, which Defendants' counsel describes as containing a "copy of transaction reports that generally reflect reservations booked through the Hotel Reservation Tool." (Chronis Decl., ECF No. 147, ¶ 9.) One of the columns in the spreadsheet reflects reservations made using ████████ rates. (*See* Chronis Decl. Ex. 6.) At oral argument, Defendants' counsel represented that ███████████████████████████████████ (*See* 8/20/19 Tr. at 17, 23.)

2)  The ACG Defendants do not enforce the requirement that a AAA membership card be shown at check-in in order to use the AAA Member Rate. (*Id*. at 69.)

3)  Some of Defendants' internal documents show that ███████████████ ████████████████████████████████████████████████████ ███████████████ (*Id*. at 66-67.)

4)  A Priceline representative testified that for business travel he was required to go to Priceline.com, but for his personal travel he usually books directly with the hotel to get his loyalty points and for price, not through Priceline or AAA. (*Id*. at 67-68.)

5)  Plaintiff was told by the three hotels which she booked through AAA.com that she would have received a lower rate by booking with these hotels directly.[12] (*Id*. at 68.)

6)  There are restrictions on the ████████████████████ (*Id*. at 70-74.)

The Court finds that none of the evidence offered by Plaintiff is sufficient to create a genuine issue of material fact as to whether Plaintiff's "membership offer[ed] exclusive discounted rates for a wide variety of AAA Diamond rated hotels worldwide." (*See* ACG Defs. 56.1 ¶ 39.) The fact that Plaintiff booked her hotel rooms using the Priceline Merchant Rate is not relevant to whether the ACG Defendants "offer[ed]" exclusive discounted rates. As set forth above, Plaintiff cannot dispute that AAA Member Rates were offered.

---

[12] Even if relevant, these hearsay statements are not properly considered in opposition to a summary judgment motion. It is well settled that "inadmissible hearsay cannot be considered on a motion for summary judgment." *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) (internal quotations omitted); *see also ABB Indus. Sys., Inc. v. Prime Tech., Inc.*, 120 F.3d 351, 357 (2d Cir. 1997) (noting that hearsay evidence "would . . . be inadmissible at trial and cannot create a triable issue of fact").

Plaintiff also cannot dispute that the rates were discounted. Under the Partner Agreements, the hotels agreed █████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████ The word "discount" is defined as "selling goods or services for less than their regular or list price." *Discount*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/discount (last visited Aug. 19, 2019). "The prevailing meaning of the word 'discount' is '[a] reduction from the full or standard amount of a price or debt.'" *Preston Law Firm, L.L.C. v. Mariner Health Care Mgmt. Co.*, 622 F.3d 384, 392 (5th Cir. 2010) (citing THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 516 (4th ed. 2009)).

The fact that there were restrictions on the ██████████████████████ at certain hotels is of no moment since the Club South Handbook only states that Plaintiff's membership offers exclusive discounted rates for a "wide variety" of AAA Diamond rated hotels worldwide. (Club South Handbook at 25.) Plaintiff's counsel candidly admitted at oral argument that Plaintiff's position is that a "wide variety" of AAA Diamond rated hotels really means "every" AAA Diamond rated hotel. (*See* 8/20/19 Tr. at 69.) However, the Court finds that the plain meaning of "wide variety" cannot mean "all."

During oral argument, Plaintiff's counsel also conceded that the lynchpin of his first breach of contract theory was whether the AAA Member Rates were "exclusive."[13] (*See* 8/20/19 Tr. at 48 ("THE COURT: So your case is just about exclusivity. MR. AXLER: It's about exclusivity."),

---

[13] Plaintiff's position is that the term "exclusive" is not ambiguous (8/20/19 Tr. at 119), and the Court agrees. *See Gwin v. City of Tallahassee*, 132 So. 2d 273, 286 (Fla. 1961) ("[T]he term 'exclusive' is not ambiguous but is a word of common ordinary usage."). The word "exclusive" is defined as "limiting or limited to possession, control, or use by a single individual or group." *Exclusive*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/exclusive (last visited Aug. 19, 2019).

55 ("THE COURT: So the lynchpin of your entire argument comes back to 'were these rates exclusive to AAA members.' MR. AXLER: That's right, your Honor.").) Thus, the Court considers whether Plaintiff has presented evidence such that a reasonable juror could find that the rates offered were not exclusive.

Plaintiff argues that the ACG Websites are open to the public and anyone can use them to book hotel reservations and that, since the Defendants did not enforce the requirement that a AAA membership card be shown at check-in in order to use the AAA Member Rate, there is an issue of fact as to whether "exclusive" rates were offered. (*See* Mem. Opp. ACG Defs. at 6, n.4; 8/20/19 Tr. at 54-55.) However, Plaintiff has put forth no evidence that this requirement was not enforced.

To support Plaintiff's allegation that the ACG Defendants did not enforce the requirement that a AAA membership card be shown at check-in in order to use the AAA Member Rate, in her 56.1 response, Plaintiff referred to 30(b)(6) witness testimony from Steven Hager. (*See* Pl. Resp. & Counter ACG Defs. 56.1 ¶ 39 at 69.)[14] Hager was asked by Plaintiff's counsel, "And what does Auto Club Group do to ensure the hotels require individuals who book AAA rates through AAA.com show their AAA membership at check in?" (Hager Tr. at 78.) After an objection that the question was outside the scope of the 30(b)(6) deposition, Hager answered, "I'm not sure." (Id.) Plaintiff's counsel disputes that his question was outside the scope, but acknowledged that Plaintiff took no steps to compel further evidence on this issue. (*See* 8/20/19 Tr. at 43-44.)

---

[14] Plaintiff's counsel stated at oral argument that there were two witnesses who made similar statements regarding this issue (*see* 8/19/19 Tr. at 43, 46-47), but Plaintiffs' response to the relevant 56.1 Statement only refers to the testimony of a single 30(b)(6) witness, Steven Hager. (*See* Pl. Resp. & Counter ACG Defs. 56.1 ¶ 39 at 69.)

At oral argument, Plaintiff's counsel suggested that deposition testimony of one of Defendants' experts supported Plaintiff's allegation that the ACG Defendants did not enforce the requirement that a AAA membership card be shown at check-in in order to use the AAA Member Rate. (8/20/19 Tr. at 40.) During oral argument, Plaintiff's counsel referred to his "memory" of statements that had been made by Defendants' expert Jared Simon during Simon's deposition:

> MR. AXLER: . . . When [Simon] was asked what was done to ensure that only AAA members could avail themselves of those rates, he was asked whether hotels checked AAA member cards.
>
> And he said that would be -- I'm going by memory here, but I am confident that he testified that it would be difficult, if not impossible, to check those cards and it was not done in his experience.

(*Id*.) Subsequent to oral argument, in response to an Order of the Court (ECF No. 211), Plaintiff's counsel confirmed that the testimony of Simon is not before the Court as part of the motion record. (*See* 8/22/19 Pl. Ltr., ECF No. 216). However, in his post-oral argument letter to the Court, Plaintiff's counsel stated that "the opinion of Mr. Simon regarding hotels' practices with regard to checking for AAA membership cards, referenced by undersigned counsel during oral argument, is set forth in Mr. Simon's expert report at page 10, paragraph 16." (*Id*.) The Court has reviewed paragraph 16 of the Rebuttal Expert Report of Jared G. Simon, submitted by Defendants in opposition to class certification. (Class Cert. Murarova Decl. Ex. B, ECF No. 184-2.) Paragraph 16 of Simon's report provides no evidence regarding hotel practices in checking AAA membership cards, but rather addresses the role of the regional clubs in verifying guest identification. (*Id*. ¶ 16.)

Finally, to support Plaintiff's allegation that there were non-AAA members using AAA Member Rates, Plaintiff's counsel pointed at oral argument to statements by Defendants' expert,

Stephen Prowse, in a rebuttal expert report (and deposition testimony), in opposition to class certification, that non-AAA members had booked reservations through AAA.com.[15] (*See*, *e.g.*, 8/20/19 Tr. at 40-41.) However, Plaintiff admittedly has not presented evidence that any of these reservations were booked at AAA Member Rates, as opposed to Priceline Merchant Rates or other rates which were not intended to be limited to AAA members. (*See id*. at 42, 43-44, 77.) Thus, as the ACG Defendants note, despite having ample opportunity to develop her evidence over an extended period of discovery, Plaintiff has not identified a single non-AAA member who has consumed a AAA Member Rate. (*See* ACG Defs. Reply at 5-6.)

Nonetheless, even assuming, *arguendo*, that there have been some individuals who were able to book and use a AAA Member Rate without being a AAA member, the Court finds that such evidence would not be sufficient to establish an issue of material fact for trial regarding whether the AAA Member Rates were exclusive to AAA members. AAA had in place Partner Agreements with ████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████ Plaintiff does not dispute the provisions of these contracts, which on their face create "exclusive" hotel rates for AAA members.

---

[15] The Rebuttal Expert Report of Stephen D. Prowse was submitted by Defendants in response to opinions of Plaintiff's expert, Theodore R. Mandigo. (Prowse Expert Report, ECF No. 184-7.) Mandigo had based damages calculations on an interrogatory response by Priceline as to the ███████████████████ ██████████████████ and erroneously believed that those commissions were generated solely from Club South members. (*Id*. ¶ 25.) According to Prowse, Mandigo had failed to recognize that the "████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ " (*Id*.)

The Court finds that Plaintiff has put forth no admissible evidence for a jury to find that AAA member rates were not exclusive. In these circumstances, Plaintiff has not articulated "specific facts showing that there is a genuine issue for trial" regarding whether a breach occurred on Plaintiff's first breach theory, *see Beard*, 548 U.S. at 529, and therefore summary judgment is appropriate.[16]

### B.    Mark-ups, Commissions And Fees

Plaintiff's second theory of breach is that she was charged undisclosed mark-ups, commissions and fees to which she did not agree. (*See* SAC ¶¶ 68, 70, 72, 79, 81, 83; Mem. Opp. ACG Defs. at 3.) This breach of contract theory is premised on the fact that the Club South Handbook was silent as to these charges. (8/20/19 Tr. at 51 ("MR. AXLER: [I]t's contractual silence."); *see also* Mem. Opp. ACG Defs. at 10-11 (Club South Handbook "says absolutely nothing about mark-ups, commissions, and fees being charged for bookings on AAA.com.").) However, a party cannot sue for breach of a contractual term that is absent from a contract. *Gulf Cities Gas Corp v. Tangelo*., 253 So. 2d 744, 748 (Fla. Dist. Ct. App. 1971) (reversing a final judgment as to silent contractual provisions, as the "court should not, under the guise of construction, impose contractual rights and duties on the parties which they themselves omitted."); *see also Lamb v. Outback Steakhouse of Fla., Inc*., No. 13-CV-794-T-35, 2014 WL 12689882, at *9 (M.D. Fla. Sept. 4, 2014). Thus, Plaintiff's second theory of breach is meritless and her breach of contract claims against the ACG Defendants should be dismissed.

---

[16] Given my finding regarding breach, I do not address damages, except to note that Plaintiff's claim for nominal damages would be sufficient to satisfy the damages prong of a breach of contract matter. See *Miami Heart Inst., Inc. v. Heery Architects & Engineers, Inc.*, No. 88-CV-1714, 1991 WL 163030, at *1 (S.D. Fla. Aug. 22, 1991) ("It is well established that nominal damages . . . are recoverable upon a finding of breach of contract even though no proof of further damages is made out." (internal quotations omitted)).

## II.   **Summary Judgment Should Be Granted To The ACG Defendants On Plaintiff's Breach Of Implied Covenant Claim**

Plaintiff argues that the ACG Defendants breached the implied covenant of good faith and fair dealing by charging Plaintiff, or allowing Plaintiff to be charged, "mark-ups, commissions, and fees." (SAC ¶¶ 73, 85; Mem. Opp. ACG Defs. at 10-13, 15.) However, to assert a claim for breach of implied covenant of good faith and fair dealing, "Plaintiff must state that Defendant breached an express provision of the contract and that the contract is silent regarding the manner by which that express provision must be carried out." *Bradman v. Mental Health Network, Inc.*, No. 08-CV-61376, 2008 WL 5110525, at *4 (S.D. Fla. Dec. 2, 2008); *see also Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. Dist. Ct. App. 2005) ("Because the implied covenant is not a stated contractual term, to operate it attaches to the performance of a specific or express contractual provision. There can be no cause of action for a breach of the implied covenant 'absent an allegation that an express term of the contract has been breached.'" (citation omitted)).

Plaintiff's breach of implied covenant claim arises from the fact that she was charged mark-ups, commissions and fees in connection with her hotel reservations through the AAA.com Hotel Reservation Tool. But, the express term Plaintiff alleges was breached reads: "Your membership offers exclusive discounted rates for a wide variety of AAA Diamond rated hotels worldwide." (Club South Handbook at 25.) The provision does not promise exclusive discounted rates free of mark-ups, commissions and fees. Nor does it imply that no mark-ups, commissions or fees can be charged on top of an exclusive discounted rate. The Club South Handbook is completely silent to whether members will be charged any such mark-ups commissions or fees.

In any event, there is no evidence in the record to reflect a "conscious and deliberate act" by ACG (or any of the Defendants), "which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of [Plaintiff} thereby depriving Plaintiff of the benefits of the agreement." *See Shibata*, 133 F. Supp. 2d at 1319. Thus, Plaintiff's claim against the ACG Defendants for breach of the implied covenant of good faith and fair dealing should be dismissed.

III.    **Summary Judgment Should Be Granted To AAA On Plaintiff's Breach of Contract And Implied Covenant Claims**

Plaintiff seeks to hold AAA liable for the alleged breach of the same provisions of the Club South Handbook that Plaintiff asserts the ACG Defendants breached. (Mem. Opp. AAA at 2-3; 8/20/19 Tr. at 58.) Since, as set forth above, the Court finds that the Club South Handbook has not been breached, and that there has been no breach of the implied covenant of good faith and fair dealing relating to the Auto Club South Handbook, there can be no viable contract-related claims against AAA.

The Court finds that the contract-related claims against AAA should be dismissed for the additional reason that AAA is not a party to the contract at issue. It is axiomatic that "[a] claim for breach of contract . . . only can be brought against a party to the contract." *U.S. Bank Nat'l Ass'n v. Saez & Assocs.*, No. 09-CV-22318, 2010 WL 11505520, at *1 (S.D. Fla. Apr. 12, 2010); *see also Brumer v. HCA Health Servs. of Fla., Inc.*, 662 So. 2d 1385, 1387 (Fla. Dist. Ct. App. 1995) ("We affirm . . . summary judgment on the breach of contract count because we cannot discern how this count could be amended to state a cause of action when the administrator was not a party to the contract."). Plaintiff indisputably is not in privity of contract with AAA. Plaintiff has not offered proof that AAA made any promises to Plaintiff or made an offer to Plaintiff that she accepted.

To the extent that Plaintiff relies upon a theory of apparent authority to argue that AAA is a party to the Club South Handbook, that reliance is misplaced since AAA – the alleged principal – made no representations to Plaintiff regarding the Club South Handbook upon which Plaintiff could have relied. *See Jackson Hewitt, Inc. v. Kaman*, 100 So. 3d 19, 31-32 (Fla. Dist. Ct. App. 2011) ("In considering a claim based on apparent authority, the inquiry properly focuses on the actions of or appearances created by the principal, not the agent."). Plaintiff provides no evidence to dispute that AAA did not draft, approve or distribute the Club South Handbook. (*See* Pl. Resp. & Counter AAA 56.1 ¶ 6.) Plaintiff argues that the use of AAA's "logo," "service marks" and "name" in the Club South Handbook establishes apparent authority. (Mem. Opp. AAA at 3, 7-9; 8/20/19 Tr. at 58.) However, the use of AAA logos or trademarks in the Club South Handbook does not establish apparent authority. *See Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 637 F. Supp. 2d 1029, 1041 (M.D. Fla. 2009) ("[A] franchisee's mere use of the franchisor's trademarks is insufficient as a matter of law to establish the reliance prong of apparent authority." (citing *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 120-21 (Fla. 1995) (use of trademarks and logos insufficient to show "even the minimum level of a 'representation' necessary to create an apparent agency relationship"))).

## IV.   Plaintiffs' Unjust Enrichment Claims Should Be Dismissed

Plaintiff brings claims of unjust enrichment against all parties, including Priceline. (SAC ¶¶ 86-93.) The claim against AAA and the ACG Defendants is premised on the theory that they "failed to provide Plaintiff and Class members with exclusive discounted rates for hotel bookings, overcharged for such bookings, and collected and retained unauthorized and undisclosed fees and commissions for hotel bookings from Plaintiff and the Class, through AAA.com." (SAC ¶ 87.)

Priceline allegedly "assisted Auto Club Group, Auto Club South, and AAA in this conduct and, for administering AAA.com's travel services, retained a portion of the overcharges collected from Class members." (SAC ¶ 88.) Plaintiff claims that she derived no benefit from Defendants and "Defendants were enriched by their receipt of the overcharges and unauthorized and undisclosed fees and commissions." (*Id.* ¶¶ 91-92.)

The Defendants shall be considered in turn. First, as to the ACG Defendants, the unjust enrichment claim should be dismissed because a valid contract existed between Plaintiff and the ACG Defendants. The law is clear that "[a] party may only recover under an unjust enrichment theory when there is no valid express or implied-in-fact contract." *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."). Here, the parties agree that the Club South Handbook constituted a valid contract between Plaintiff and the ACG Defendants. Thus, the unjust enrichment claim cannot stand as against the ACG Defendants.

Second, as to AAA, the unjust enrichment claim should be dismissed since Plaintiff conferred no benefit on AAA and, even if some benefit were indirectly conferred, it would not be unjust for AAA to retain it.  In its 56.1 statement, AAA cites to deposition testimony to support the proposition that "Plaintiff . . . did not pay any monies to AAA in connection with her Hotel Reservations or otherwise." (AAA 56.1 ¶ 23.) In her response, Plaintiff disputes this statement because "individual clubs pay to AAA all or part of the membership dues." (Pl. Resp. & Counter

AAA 56.1 ¶ 23.) The fact that AAA received payments from the ACG Defendants unrelated to the hotel transactions at issue does not establish that AAA was conferred a benefit by Plaintiff.

This case is analogous to *Virgilio v. Ryland Group, Inc*., 680 F.3d 1329 (11th Cir. 2012), where the Eleventh Circuit applied Florida law to an unjust enrichment claim. In *Virgilio*, the plaintiffs made payment for purchases of homes to the builder, Ryland, and the builder thereafter paid a 1.5% fee to the defendants. Plaintiffs argued that "they 'indirectly' conferred a benefit on Defendants because the 1.5 percent fee Ryland paid for Defendants' marketing services represented 1.5 percent of the price Ryland received from Plaintiffs at closing." *Id*. at 1337. The Eleventh Circuit affirmed the dismissal of plaintiffs' unjust enrichment claims holding: "The mere fact that Ryland bargained away [to Defendants] its right to 1.5 percent of the purchase price of Plaintiffs' houses did not change the fact that Ryland, not Plaintiffs, conferred the benefit on Defendants." *Id*.  The court stated that the *Virgilio* plaintiffs did not "not seek to recover money [the defendants] received as partial payment for the houses they bought; instead, they [sought] the money [the builder] paid for marketing services under an entirely separate services contract." *Id*. *Virgilio* continues to be good law, and "stands for the proposition that a party is not directly benefited by the plaintiff when the only benefit it received was for performing a service for a different party under a different, albeit arguably related, contract." *Coffey v. WCW & Air, Inc*., No. 17-CV-90, 2018 WL 4154256, at *9 (N.D. Fla. Aug. 30, 2018).

In the present case, as in *Virgilio*, Plaintiff did not confer any benefit to AAA; it was the ACG Defendants that conferred the benefit. In addition, the circumstances of this case are more remote than in *Virgilio* since in the present case, in contrast to *Virgilio*, AAA was not paid a percentage of monies that the ACG Defendants received from Plaintiff's hotel transactions, but

AAA was paid pursuant to a separate arrangement with███████████████ (*See* 8/20/19 Tr. at 26 ("AAA is compensated████████████████████████████████████████ █████████████████████████

Even if some benefit could be deemed to have been conferred on AAA by Plaintiff, either directly or indirectly, it would not be unjust for AAA to retain it. There is nothing in the record before this Court to suggest that it is a "violation of good conscience and fundamental principles of justice or equity" for AAA to retain whatever small amount of money it received attributable to the fact that Plaintiff paid dues to the ACG Defendants. See *Henry M. Butler, Inc.*, 524 So. 2d at 711.

Third, as to Priceline, the unjust enrichment claim should be dismissed since Plaintiff received adequate consideration from Priceline. Here, Plaintiff indisputably used the services of Priceline to procure hotel reservations, which constituted adequate consideration. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007) ("When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails."); *JDI Holdings, LLC v. Jet Mgmt.*, Inc., 732 F. Supp. 2d 1205, 1234 (N.D. Fla. 2010) ("[B]ecause the circumstances demonstrate that [Defendant] performed valuable services, [Defendant] was not unjustly enriched by the payment.").

Plaintiff's counsel stated at oral argument that Plaintiff's unjust enrichment theory against Priceline is based upon "imposing" the ACG contract on Priceline. (8/20/19 Tr. at 65-66.) Yet, Plaintiff articulated no legal basis for doing so in her submissions, and the Court finds none. Furthermore, even if the terms of the Club South Handbook were imposed on Priceline, Priceline

would not be liable, since the Club South Handbook is silent as to mark ups, commissions and fees. *See* Discussion Section I.B., *supra*.[17]

By reason of the foregoing, Plaintiff's unjust enrichment claims should be dismissed as to all Defendants.

## V.   Class Certification

Because I recommend that Plaintiff's claims be dismissed, I also recommend that Plaintiff's motion for class certification be denied as moot. *See Flood v. Just Energy Mktg. Corp.*, No. 15-CV-2012 (KBF), 2017 WL 280820, at *7 (S.D.N.Y. Jan. 20, 2017), *aff'd*, 904 F.3d 219 (2d Cir. 2018) ("Because [plaintiff's] claims do not survive [defendant's] motion for summary judgment, the Court denies his motion for class certification as moot.").[18]

---

[17] Given the Court's rulings as to the absence of an unjust enrichment claim against any of the Defendants, the Court does not base its recommendation upon the voluntary payment doctrine defense to unjust enrichment. *See*, *e.g.*, *City of Key West v. Florida Keys Community College*, 81 So. 3d 494, 500 (Fla. Dist. Ct. App. 2012) ("[M]oney voluntarily paid upon claim of right, with full knowledge of all the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability . . . ."); *Solomon v. Bell Atl. Corp.*, 9 A.D.3d 49, 55 (N.Y. App. Div. 1st Dep't 2004) (voluntary payment doctrine bars recovery of payments voluntarily made "with full knowledge of the facts"). Before Plaintiff finalized each online reservation, the total cost she was paying was broken down into different line items, one being "taxes and fees." (*See* Rothstein Tr. at 234-38; Ginter Decl. ¶¶ 8-9.) The Taxes and Fees line was an active hyperlink which, when clicked, disclosed, among other things, that Taxes and Fees included compensation for services and for the costs of making the reservation; that the amount of Taxes and Fees "varie[d]" based on a number of factors; and that the Taxes and Fees may include retained profit. (Ginter Decl. ¶ 9.) However, the fees charged to Plaintiff were not itemized and/or broken out, and Plaintiff asserts that she never clicked on the hyperlink. (Rothstein Decl., ECF No. 173, ¶ 12.) Thus, there is an issue of fact as to whether Plaintiff had "full knowledge" of the facts, and summary judgment cannot be granted on the voluntary payment doctrine.

[18] In view of this disposition of the class certification motion, I recommend that the motion to strike and/or exclude the expert report of Theodore R. Mandigo (Defs. Not. of Mot. To Strike), which motion was submitted in opposition to class certification, also be denied as moot.

## CONCLUSION

For the foregoing reasons, I recommend that Defendants' motions for summary judgment (ECF Nos. 133, 134 & 137) be GRANTED and that this case be dismissed. I further recommend Plaintiff's motion for class certification (ECF No. 130), as well as Defendants' motion to strike and/or exclude Theodore R. Mandigo's opinions (ECF No. 185), be DENIED as moot.

DATED:        August 26, 2019
              New York, New York

_____
STEWART D. AARON
United States Magistrate Judge

\*               \*               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Kaplan.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).